[L.A. No. 30857. Oct. 25, 1978.]

MICHAEL HOYEM et al., Plaintiffs and Appellants, v.
MANHATTAN BEACH CITY SCHOOL DISTRICT,
Defendant and Respondent.

**COUNSEL**

Morgan, Wenzel & McNicholas, Bruce A. Broillet and Darryl L. Dmytriw for Plaintiffs and Appellants.

Harold Q. Longnecker, Ellis J. Horvitz, Edward J. Horowitz and Horvitz, Greines & Poster for Defendant and Respondent.

John H. Larson, County Counsel (Los Angeles) Roberta M. Fesler, Deputy County Counsel, Ronald J. Apperson and Ralph D. Stern as Amici Curiae on behalf of Defendant and Respondent.

**OPINION**

**TOBRINER, J.—** ▮ In this case we must determine whether, under California law, a school district may ever be held liable when, as a result

of school authorities' negligent supervision of students on school premises, a pupil leaves the school grounds during school hours and is subsequently injured by a motorist. Although the trial court held that a school district incurs no liability under such circumstances as a matter of law, we have concluded that the trial court was in error and that, if plaintiffs can prove that the pupil's injury was proximately caused by the school district's negligent supervision, the district may be held liable for the resultant damages.

In the summer of 1974 plaintiff Michael Hoyem, a 10-year-old boy, attended summer school at Foster A. Begg School in defendant school district. On July 16 Michael arrived at school to attend classes but before the end of scheduled classes he left the school premises. At a public intersection a motorcycle struck Michael and he was seriously injured. A few hours after the accident plaintiff Mary Ann Hoyem, Michael's mother, saw him in the hospital and suffered emotional and physical injuries.

Thereafter, Michael and his mother, alleging that the accident and resulting injuries were proximately caused by the school district's negligent supervision, instituted the present action against the school district.[1] In the third amended complaint Michael sought recovery for the injuries he sustained in the accident, and his mother sought to recover (1) moneys she had expended for Michael's medical care, (2) damages to compensate her for the loss of Michael's "comfort and society," and (3) damages for the physical and emotional injuries she suffered on viewing Michael in his injured state at the hospital. The trial court sustained defendant's demurrer to all causes of action and dismissed the action; plaintiffs now appeal from the resulting judgment.

As we explain, the trial court erred in dismissing the causes of action seeking to recover damages for Michael's injuries and medical expenses allegedly caused by the school district's negligence. The causes of action based upon Mary Ann's loss of Michael's "comfort and society" and her own injuries allegedly incurred when viewing Michael in the hospital are, however, precluded by recent decisions of this court and were properly dismissed by the trial court.

---

[1] Plaintiffs have filed a separate action against the driver of the motorcycle and the issue of the driver's liability is not before us.

1. *A school district bears a duty to supervise students while on the school premises during the school day and the district may be held liable for a student's injuries which are proximately caused by the district's failure to exercise reasonable care under the circumstances.*

■ Although a school district is not an insurer of its pupils' safety (*Taylor* v. *Oakland Scavenger Co.* (1938) 12 Cal.2d 310, 317 [83 P.2d 948]), our cases have long established that a school district bears a legal duty to exercise reasonable care in supervising students in its charge and may be held liable for injuries proximately caused by the failure to exercise such care. (E.g., *Taylor* v. *Oakland Scavenger Co., supra,* 12 Cal.2d 310; *Pirkle* v. *Oakdale Union etc. School Dist.* (1953) 40 Cal.2d 207 [253 P.2d 1]; *Satariano* v. *Sleight* (1942) 54 Cal.App.2d 278, 282-285 [129 P.2d 35]. See generally Annot. (1971) 38 A.L.R.3d 830.)

We recently reaffirmed this rule in *Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747 [87 Cal.Rptr. 376, 470 P.2d 360], declaring that "California law has long imposed on school authorities a duty to 'supervise at all times the conduct of the children on school grounds and to enforce those rules and regulations necessary to their protection.' [Citations.] The standard of care imposed upon school personnel in carrying out this duty to supervise is identical to that required in the performance of their other duties. This uniform standard to which they are held is that degree of care 'which a person of ordinary prudence, charged with [comparable] duties, would exercise under the same circumstances.' [Citations.]"

In *Dailey,* two unsupervised high school students engaged in "slap-boxing" in the school gym during lunch hour, and as a result, one of the students fell, struck his head, and died shortly thereafter. "Slap-boxing" is a rough and forbidden game which, according to the testimony of other students, was never played when a teacher was nearby. In reversing a directed verdict in favor of defendant school district, this court held that the issues of whether or not the school acted negligently in failing to provide adequate supervision of the lunch hour recess and, if so, whether the student's injuries were proximately caused by such negligence, fell within the province of the jury.

■ The pleadings in the instant case are virtually identical to those which our court found sufficient to state a cause of action in *Dailey.* In both cases the complaint alleged that the school district failed to exercise ordinary care in supervising a student *while the student was on school*

*premises,* and that such negligence proximately caused the student's resulting injury. Under well established principles, such general allegations of negligence, proximate causation and resulting injury and damages suffice to state a cause of action (see 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, §§ 450, 465, pp. 2103, 2119-2120); the court therefore improperly sustained defendant's general demurrer. Although defendant presents several arguments in an attempt to distinguish *Dailey* and related authorities, none of the proposed distinctions withstands analysis.

Defendant district first contends that the duty to supervise pupils applied in *Dailey* and earlier cases does not include any responsibility for assuring that pupils remain on the school premises during the school day. As the *Dailey* court pointed out, however, the duty to supervise includes the duty "to enforce those rules and regulations necessary [for pupils'] protection." (2 Cal.3d at p. 747.) Title 5, California Administrative Code, section 303 provides: "A pupil may not leave the school premises at recess, or at any other time before the regular hour for closing school, except in case of emergency, or with the approval of the principal of the school." We have no doubt that this rule is at least in part for the pupils' protection, and that the school authorities therefore bore the duty to exercise ordinary care to enforce the rule.

Defendant argues, however, that no California case has as yet held a school district liable for an injury incurred off school premises. Viewing the situs of the injury as a limitation on the school district's duty to supervise, defendant contends that while a school district may be obligated to exercise reasonable care to prevent on-campus injuries, it bears no similar duty to supervise students so as to prevent off-campus accidents, unless the school has specifically undertaken to provide off-campus supervision.

In the first place, defendant's broad assertion that no California decision has held a school district liable for an off-school premises injury is simply inaccurate. In *Satariano* v. *Sleight, supra,* 54 Cal.App.2d 278, a high school athletic field was located across a public street from the school gymnasium, and a 17-year-old student, hit by an automobile as he was crossing the street to get to the athletic field, suffered serious injury. The student brought suit against the school district, claiming that the school authorities' negligent supervision proximately caused his injuries. The evidence at trial indicated that although school authorities were aware that students regularly ran across the street outside of the crosswalk

and when a teacher happened to be present the teacher would warn students to correct their behavior, the school had taken no general steps to prevent such dangerous conduct, such as stationing a teacher by the street during appropriate times.

The trial court in *Satariano* took the view that the school authorities' duty of supervision "ceased once the child was on a public street" (54 Cal.App.2d at p. 284) and consequently absolved the school district of all liability for the student's injuries. On appeal, however, the Court of Appeal reversed, holding that in light of the school authorities' knowledge that many students regularly crossed the public street outside of a crosswalk, the jury should have been permitted to determine whether "ordinary care for [the students'] protection did not require of the school authorities something more than sporadic warnings to individuals and groups in those accidental instances when teachers happened to be present." (Pp. 284-285.) ■ Thus, *Satariano* refutes defendant's claim that the off-premises location of an injury is always sufficient, in itself, to insulate school officials from liability.

In addition to demonstrating that the off-campus situs of an injury does not ipso facto bar recovery from a school district, *Satariano* illustrates that, at least in some limited instances, school authorities may bear a responsibility for supervising students when they are not on school property. (See also *Raymond* v. *Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1, 10-11 [31 Cal.Rptr. 847]; *Lehmuth* v. *Long Beach Unified Sch. Dist.* (1960) 53 Cal.2d 544, 551-552 [2 Cal.Rptr. 279, 348 P.2d 887].) ■ In the instant case, however, we have no occasion to probe the scope of school authorities' "off premises" supervisory duty, for in this case defendant's alleged negligence relates to the district's firmly established duty to exercise due care in supervising Michael *while he was on school premises.*

In this context, defendant's emphasis on the *situs of the injury* is totally misplaced. Contrary to defendant's assertion, no California decision suggests that when a school district fails to properly supervise a student on school premises, the district can automatically escape liability simply because the student's ultimate injury occurs off school property. (Cf. *Calandri* v. *Ione Unified School Dist.* (1963) 219 Cal.App.2d 542, 549-550 [33 Cal.Rptr. 333] (school district liable for injury student sustained *at home* as a result of dangerous instrument made in shop class).) Thus, in reversing the trial court decision in this case we neither impose a new duty on school districts nor in any way extend the well-established rule

reiterated in *Dailey*; we merely reaffirm that school districts must exercise reasonable care in supervising their pupils while the pupils are on school premises. A district may be held liable if its breach of that duty proximately causes a student's injury.

The recent case of *Bryant* v. *United States* (10th Cir. 1977) 565 F.2d 650 confirms our conclusion that defendant's potential liability under the facts of this case flows directly from a school district's familiar duty to exercise ordinary care in supervising students on school premises. In *Bryant,* three young students at a New Mexico boarding school left the school premises without permission and were subsequently trapped in a snowstorm; as a result, the youngsters suffered extreme frostbite, necessitating the amputation of each student's legs. The students subsequently sued the federal authorities who ran the school, alleging that the injuries were proximately caused by the school's negligent supervision, and the jury returned a substantial verdict in favor of the students.

On appeal, the Tenth Circuit Court of Appeals affirmed the judgment. The court pointed out that under the governing New Mexico law, as in California, although "school authorities do not have responsibility for protective supervision at all places and under all circumstances" (565 F.2d at p. 652), "*school authorities [do] have the duty to exercise ordinary care in protecting and supervising students while they are on school grounds.* [Citations.]" (Italics added.) (*Id.*) Because the evidence in the case established that the school authorities had failed to provide adequate supervision while the students were playing outside of the school dormitories, permitting plaintiffs to run away from the school, the court concluded that the jury could properly conclude that the authorities had breached their duty to provide reasonable "on school ground" supervision and that the school's negligence in this regard was a proximate cause of the students' injuries. In light of the similarity between the applicable New Mexico and California law, the *Bryant* decision directly supports our conclusion that plaintiff's complaint states a cause of action against defendant district.

■ In support of its contention that the off-premises situs of plaintiff's injuries should absolve it of all responsibility, defendant relies on Education Code section 44808 (formerly § 13557.5) which provides, in relevant part: "[N]o school district . . . shall be responsible or in any way liable for the conduct or safety of any pupil of the public schools at any time when such pupil is not on school property, unless such district, . . . has undertaken to provide transportation for such pupil to and from the

school premises, has undertaken a school-sponsored activity off the premises of such school, has otherwise specifically assumed such responsibility or liability or has failed to exercise reasonable care under the circumstances. . . ." Although defendant contends that this statute cloaks the school with a blanket immunity for off-campus injuries unless the school undertakes to furnish off-campus supervision or sponsors an off-campus activity, neither the language nor the legislative history of the statute supports such an interpretation.

First, the language of the statute itself specifies that its limitation on liability does not apply to the allegations of the instant complaint. Although the initial portion of the statute provides that "no school district shall be responsible . . . for the conduct or safety of any pupil . . . at any time when such pupil is not on school property," the section goes on explicitly to withdraw this grant of immunity whenever the school district, inter alia, "*has failed to exercise reasonable care under the circumstances.*"[2] Plaintiffs' complaint alleges that the school district failed to exercise reasonable care. Assuming, as we must on appeal from a sustained demurrer, the truth of the allegations of the complaint (see, e.g., *Harman* v. *City and County of San Francisco* (1972) 7 Cal.3d 150, 165 [101 Cal.Rptr. 880, 496, P.2d 1248]; *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732]), section 44808, by its own terms, does not bar liability in the present case.

Second, the decisional history preceding the enactment of section 44808 indicates that the Legislature intended to limit a school district's liability under very different circumstances than those presented here. Two Court of Appeal cases, *Kerwin* v. *County of San Mateo* (1959) 176 Cal.App.2d 304 [1 Cal.Rptr. 437] and *Girard* v. *Monrovia City School Dist.* (1953) 121 Cal.App.2d 737 [264 P.2d 115], which preceded the enactment of the section and upon which defendant relies heavily, demonstrate that the Legislature was principally concerned with limiting a school district's liability for injuries to pupils either before or after school hours while children were either going to school or coming home after school.

---

[2]That the "reasonable care" exception in the statute is not accidental is clear from the legislative history. The original bill, passed by the Assembly, was identical to the current statute but did not include the final phrase about reasonable care. That phrase was added by Senate amendment (4 Sen. J. (1972 Reg. Sess.) p. 6247) and then approved unanimously by the Assembly. (4 Assem. J. (1972 Reg. Sess.) p. 7049.) The intent of the Legislature is clear: when a school district fails to exercise reasonable care the immunity of this section evaporates.

In *Kerwin,* a six-year-old boy became ill at school. A school official telephoned the boy's home and, finding no one at home except the boy's eleven-year-old brother, asked the brother to come and take the six-year-old home. The school subsequently released the six-year-old to his brother, and on the boys' way home the *eleven-year-old,* who did not attend the younger brother's school, incurred injury. In denying recovery to the injured plaintiff, the Court of Appeal observed in dictum that even with respect to its own pupils "[a] school district is under no duty to supervise, or provide for the protection of its pupils, *on their way home,* unless it has undertaken to provide transportation for them. . . ." (176 Cal.App.2d at p. 307.) (Italics added.) Thus, the language in *Kerwin* relied upon by defendant simply declared that a school district is not legally responsible for accidents en route once pupils have been released from school, or before they arrive at school. The Legislature, in borrowing from the *Kerwin* language for section 44808, apparently intended to limit a district's liability under similar circumstances.

In *Girard,* also relied on by defendant, the court denied recovery under circumstances analogous to *Kerwin.* In *Girard* a boy was killed in a traffic accident on his way home from school. The complaint alleged that defendant school district negligently enrolled the child in the wrong school, causing him to cross heavily traveled streets on his way home from school. Like *Kerwin, Girard* held that a school district has no responsibility to see that children travel safely to and from school unless it undertakes to provide transportation. (See also *Wright* v. *Arcade School Dist.* (1964) 230 Cal.App.2d 272, 279-280 [40 Cal.Rptr. 812]; *Gilbert* v. *Sacramento Unified School Dist.* (1968) 258 Cal.App.2d 505, 508-510 [65 Cal.Rptr. 913].) Thus neither case, nor section 44808 which followed them, in any way limits a school district's responsibility to supervise students during school hours on school premises, and these authorities provide no aid to defendant in the instant case.[3]

Defendant strenuously argues that overwhelming policy considerations militate against the imposition of liability on a district in a case, such as this in which the injured pupil left the school voluntarily, "playing

---

[3]Defendant also relies on *Castro* v. *Los Angeles Bd. of Education* (1976) 54 Cal.App.3d 232 [126 Cal.Rptr. 537] which, in dicta interpreting the instant statute, states: "Students who participate in nonrequired trips or excursions . . . are effectively on their own; the voluntary nature of the event absolves the district of liability." (54 Cal.App.3d at p. 236.) *Castro,* however, is distinguishable from the instant case because it dealt not with an allegation that the school district failed to exercise reasonable care in supervising students on school premises, but with an accident occurring at a school-sponsored ROTC outing. The *Castro* court held the district liable because the activity was school-related.

hooky." Holding a school district liable for such an injury to a truant would lead, defendant urges, to "truant-proof" schools, where, to avoid liability, school personnel would be required virtually to chain students to their desks to keep them from leaving. Defendant and amicus school districts spare no metaphor in portraying the fortress-like schools which would allegedly result from our holding that the instant plaintiffs have stated a cause of action against the instant defendant. The construction of these escape-proof schools would, it is stressed, be highly detrimental to education in this state.

The district's fears in this regard are, however, clearly unwarranted since, as already noted, the district is not liable for an injury sustained by a truant under all circumstances, but rather is legally responsible only for those injuries which proximately result from the district's failure to exercise "that degree of care 'which a person of ordinary prudence, charged with [comparable] duties, would exercise under the same circumstances.' " (*Dailey, supra,* 2 Cal.3d at p. 747.) At trial, plaintiffs face the burden of showing that the district's supervisory procedures fell below that degree of care which reasonably prudent persons would exercise, and the jury may well absolve the district of liability in this regard. We require ordinary care, not fortresses; schools must be reasonably supervised, not truant-proof.[4]

Finally, defendant argues that while a duty to supervise may arise during the school year, when attendance is compulsory, no such duty should be imposed during voluntary summer session. Defendant cites no authority for discarding the duty to supervise in summer session, and we find the proposed distinction artificial. Although a student may not be forced to enroll in summer school, once enrolled he must attend classes.

Additionally, the measure of the trust that parents place in the school to supervise their children is surely not diminished during summer. A large number of working parents enroll their children in summer school because they cannot afford alternative adult supervision. Surely these parents may legitimately expect adequate supervision. The following language from *Satariano* v. *Sleight, supra,* 54 Cal.App.2d 278, 284, is as relevant to summer session as to the regular school year: "We entrust the safety of our children to our public school authorities during school

---

[4]Moreover, if the jury finds that the truant student's negligence was a proximate cause of his injuries, defendant's liability for such injuries will, of course, be diminished on the basis of comparative negligence principles. (See *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].)

hours. They are bound to exercise an amount of care for their safety during that period commensurate with the immaturity of their charges and the importance of their trust."

2. *Whether or not defendant's negligence proximately caused plaintiff's injury is a question of fact for the jury.*

Although defendant primarily argues that a school district bears no "duty" to prevent off-campus injuries, it also claims that as a matter of law negligent on-campus supervision *cannot* be the proximate cause of an off-campus injury. Proximate cause, however, is generally a question of fact for the jury, and, as we explain, on the basis of the allegations in the instant case the trial court could not properly hold as a matter of law that defendant's alleged negligent supervision on the campus did not proximately cause plaintiff's off-campus injury. (See 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 621, p. 2903 and cases cited therein.)

Defendant initially contends that it should not be expected to foresee that students will take advantage of a lapse in supervision to leave the school premises, and therefore that any off-campus injury is unforeseeable as a matter of law.[5] Since at least the days of Huck Finn and Tom Sawyer, however, adults have been well aware that children are often tempted to wander off from school, and a jury might well conclude that defendants could have reasonably foreseen that this temptation might be especially strong during summer session when a student's friends might not be in school. Indeed, the duty to supervise school children is imposed in large part in recognition of the fact that, without such supervision, students will not always conduct themselves in accordance with school rules or as safely as they ought to. (See, e.g., *Dailey* v. *Los Angeles Unified Sch. Dist., supra,* 2 Cal.3d at p. 751; *Satariano* v. *Sleight, supra,* 54 Cal.App.2d at pp. 283-284.) ▪ ▪▪▪ Thus, we cannot say that Michael's departure from school was unforeseeable as a matter of law.[6]

---

[5] Defendant does not contend that the trial court could conclude that its alleged negligence was not an actual or "but for" cause of the accident as a matter of law. Plaintiff alleges that if defendant had provided adequate supervision, Michael would never have left the school premises and would not have sustained his subsequent injuries. On the basis of this pleading, the issue of actual causation is clearly a question of fact for the jury.

[6] Although defendant argues that its negligent supervision should not be considered a proximate cause of the accident because the accident might easily have occurred at a time of day during which the district bore no duty of supervision, under traditional negligence principles such a speculative possibility cannot absolve the district of liability for the accident. Thus, in *Dailey,* for example, although the district could have similarly claimed that the slap-boxing incident might have occurred during nonschool hours, our opinion

Defendant furthermore argues that the conduct of the motorcyclist who hit the plaintiff represents a "superseding cause" which cuts off any liability that the school district might bear for the accident. In *Dailey,* defendant school district pressed a similar argument, suggesting that the school's negligent supervision was not a proximate cause of the injury because a third party wrongfully hit the plaintiff. We rejected that argument, noting: "[t]he fact that another student's misconduct was the immediate precipitating cause of the injury does not compel a conclusion that negligent supervision was not the proximate cause of Michael's death. *Neither the mere involvement of a third party nor that party's wrongful conduct is sufficient in itself to absolve the defendants of liability, once a negligent failure to provide adequate supervision is shown.* [Citation.]" (Italics added; fn. omitted.) (2 Cal.3d at p. 750.)

As we explained in *Akins* v. *County of Sonoma* (1967) 67 Cal.2d 185, 199 [60 Cal.Rptr. 499, 430 P.2d 57], "where [an] injury was brought about by a later cause of independent origin . . . [the question of proximate cause] revolves around a determination of whether the later cause of independent origin, commonly referred to as an intervening cause, was foreseeable by the defendant or, if not foreseeable, whether it caused injury of a type which was foreseeable. If either of these questions is answered in the affirmative, then the defendant is not relieved of liability towards the plaintiff; if, however, it is determined that the intervening cause was not foreseeable and that the results which it caused were not foreseeable, then the intervening cause becomes a supervening cause and the defendant is relieved from liability for the plaintiff's injuries."

In the instant case, we certainly cannot say that the risk of a student's injury at the hands of a negligent motorist is, as a matter of law, not a foreseeable risk created by a school district's failure to exercise due care in supervising its pupils. (See, e.g., *Taylor* v. *Oakland Scavenger Co., supra,* 12 Cal.2d 310; *Satariano* v. *Sleight, supra,* 54 Cal.App.2d 278.) Thus, the subsequent negligence of the motorist does not necessarily relieve the district of all liability for the injury. Of course, under this court's recent decision in *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], the school district is entitled to join the motorcyclist as a cross-defendant in the action in order to pursue a claim for comparative indemnity; thus, if the jury

made clear that the district could be held liable so long as its negligent supervision was an actual ("but for") cause of the injury and the general type of injury was reasonably foreseeable. (See 2 Cal.3d at pp. 750-751 and fn. 7.) The same principles apply here.

determines that the motorcyclist is principally responsible for the injuries, he will be the party who will bear primary responsibility for the lion's share of the damages.

In sum, the trial court's decision sustaining defendant's demurrer cannot be justified on the ground that defendant's alleged negligence was not a proximate cause of plaintiff's injuries as a matter of law. The proximate cause issue should properly have been submitted to the jury.

Accordingly, the trial court erred in dismissing plaintiffs' action seeking recovery for Michael's injuries.

3. *Mary Ann's causes of action for loss of Michael's comfort and society and for her own injuries were properly dismissed.*

Plaintiff Mary Ann Hoyem's cause of action for her expenditures on Michael's behalf was, like Michael's own cause of action, improperly dismissed. Her other causes of action, however, for loss of Michael's "comfort and society" and for her own injuries on viewing Michael in the hospital, are precluded by recent decisions of this court.

■    In *Baxter* v. *Superior Court* (1977) 19 Cal.3d 461, 463 [138 Cal.Rptr. 315, 563 P.2d 871], this court declined "to enlarge the parent's cause of action to permit recovery for the loss of affection and society" when a child is injured. Mary Ann's cause of action on this score cannot stand.

■    Mary Ann also urges that this court extend the cause of action we recognized in *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [68 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], to include a plaintiff who suffers emotional and physical injury when seeing the primary victim of defendant's negligence hours after the accident. In *Dillon* this court set out the rule that "courts should allow recovery to a mother who suffers emotional trauma and physical injury *from witnessing* the infliction of death or injury to her child for which the tortfeasor is liable in negligence." (Italics added.) (68 Cal.2d at p. 730.)

The Court of Appeal in *Deboe* v. *Horn* (1971) 16 Cal.App.3d 221 [94 Cal.Rptr. 77] declined to extend the *Dillon* rule to include a wife who suffered emotional and physical injury when seeing her husband in the hospital hours after he had been injured in an automobile accident due to defendant's negligence. Recently, in *Justus* v. *Atchison* (1977) 19 Cal.3d

564 [139 Cal.Rptr. 97, 565 P.2d 122], we approved the *Deboe* opinion and denied recovery to an expectant father who was present in the delivery room when the fetus of his unborn child died, but who did not know of the death until later informed by doctors. We held in *Justus* that *"Dillon* requires more than mere physical presence: . . . the shock must also result from a 'direct emotional impact' on the plaintiff caused by 'sensory and contemporaneous observance of the accident.'" (19 Cal.3d at p. 584.) Mary Ann's *Dillon* cause of action, was therefore, properly dismissed.

### 4. *Conclusion.*

■ As explained above, California school districts have long borne a legal duty to exercise reasonable care in supervising students on school premises during school hours. In the present case, plaintiffs' complaint alleges both that defendant breached this duty of care and that such negligence proximately caused Michael's injuries. These allegations are sufficient to state a cause of action against the school district.

Contrary to defendant's assertions, our holding in no way expands the supervisory obligations of school districts and does not place a new duty upon school authorities to control the conduct of students when they are off school premises. As we have explained, defendant's liability in this case is posited not on an alleged failure to supervise Michael when he was off the school premises, but rather on an alleged failure to exercise due care *in supervision on school premises.* Defendant will be held liable for Michael's injuries only if the jury concludes that defendant's on-site supervision was negligent and that such negligence was a proximate cause of those injuries.

The judgment is affirmed insofar as it dismisses Mary Ann Hoyem's causes of action for loss of Michael's society and comfort and for personal injuries sustained as a result of viewing Michael's injuries after the accident. In all other respects, the judgment is reversed. Plaintiffs shall recover their costs on appeal.

Bird, C. J., Manuel, J., and Newman, J., concurred.

**CLARK, J.,** Concurring and Dissenting.—Paying only lip service to the established rule a public school district is "not an insurer of its pupils' safety" (*ante,* p. 513), the majority impose on districts insurmountable

duties and financial burdens. We are told a district has an *absolute liability* for whatever ill befalls a truant after escaping from school premises because security measures are too lax.[1] Short of complete closure, the majority opinion forces a district to respond in one or both of two ways, either of which imposes impractical if not impossible financial responsibilities.

First, a district may insure truants against third party tortfeasors for injuries suffered while off school grounds. Even absent the great cost of this added responsibility, it is questionable whether school districts can survive financial burdens already thrust upon them by ever increasing personal injury awards and erosion of sovereign immunity concepts. The State Superintendent of Public Instruction, in a press release on 5 April 1978, stated public schools face an insurance crisis which could bankrupt them if unchecked. He reported liability insurance premiums in the four preceding years have increased an average of 345 percent for elementary school districts, stating "Costs have gone up so much that some school districts can't afford to pay for the insurance they need to protect themselves. . . . And even if they have the money, coverage is hard to get because many insurance companies are not interested in insuring schools." (See, also Liability Insurance in California Public Schools (Dept. Pub. Ed. 1978); A Report of the Liability and Property Insurance Crisis in Los Angeles County Public Schools (Office of L.A. Co. Super. of Pub. Schs. 1977).)

The report of the Department of Education shows total premiums paid by included school districts rose from $8,272,684 in 1974-1975 to $39,794,451 in 1977-1978, with only minimal expansion in total coverage. The data compiled and reported by the department did not, of course, reflect the further dramatic premium increases today's opinion will produce. In view of the tremendous financial impact resulting from adoption of Proposition 13 in the Primary Election of 1978, the majority

---

[1]We are not told of the majority position in the case of students who, having permission to be off campus or having terminated their school day, are injured by third party tortfeasors while proceeding to their homes. Certainly the majority do not intend to afford the truant greater benefits than are afforded students conforming to established rules. Yet the Legislature has expressly denied protection to such students. (Ed. Code, § 44808, formerly § 13557.5.) The majority do not explain such conflict nor do they attempt to square today's decision with decisions holding a district is not liable for off-campus injuries suffered by a student while returning home from school (*Girard* v. *Monrovia City School Dist.* (1953) 121 Cal.App.2d 737 [264 P.2d 115]; *Angelis* v. *Foster* (1938) 24 Cal.App.2d 541 [75 P.2d 650]), while away from school with express permission (see *Kerwin* v. *County of San Mateo* (1959) 176 Cal.App.2d 304 [1 Cal.Rptr. 437]), or even while on an errand for the teacher (see Annot. 38 A.L.R.3d 830, 844).

decision will surely hasten the insolvency of some school districts as predicted by the State Superintendent of Public Instruction.

The alternative, itself imposing additional financial and administrative burdens, is to increase security on school campuses to reduce truancy. This can be accomplished by reducing campus size to a manageable enclosure and restricting students either by barriers or by security personnel sufficient in number to watch and police all points of egress—essentially a concentration camp.[2]

An even more serious problem confronting school districts would be in maintaining the quality of education now available on open campuses. In *Bright* v. *Los Angeles Unified Sch. Dist.* (1976) 18 Cal.3d 450 [134 Cal.Rptr. 639, 556 P.2d 1090], we dealt with the question of openness of expression on school campuses. Although we now deal with the question of openness of physical freedoms our views in *Bright* are nevertheless pertinent. We said there that "student communication . . . may cause trouble and lead to disturbance, but 'our history says that it is this sort of hazardous freedom—this kind of openness—that is the basis of our national strength and of the independence and vigor of Americans who grow up and live in this relatively permissive, often disputatious, society.' " (*Id.,* at p. 456, quoting from *Tinker* v. *Des Moines School Dist.* (1968) 393 U.S. 503, 508-509 [21 L.Ed.2d 731, 738-739, 89 S.Ct. 733]. An enforced atmosphere of confinement and limitation on movement will also discourage off-campus and inter-campus innovative programs and even such programs which require freedom of movement to different facilities within a single campus.

There is little question the majority decision is grounded on a policy determination that, in their view, yet another element of society should be afforded an insured's protection against mishap.[3] Such policy determination is generally for the Legislature either to make in the first instance or to redetermine after judicial intervention into an area properly a legislative matter. The author of today's majority opinion has

---

[2]There is actually little a school district can do to restrain a student who wishes to leave a campus. Even a habitual truant cannot be suspended or removed from school rolls. (Ed. Code, § 48900.) The majority thus propose to make a school district an insurer of the safety of such persons although the district lacks the power to control their movements.

[3]If a school district is negligent because a truant is able to leave campus, and such negligent conduct is the actual and proximate cause of injuries suffered when struck by a negligently operated motorcycle, is not the school district liable to a motorcycle driver injured when that truant negligently darts into the motorcycle's path?

addressed the issue of when the court should decline to extend liability. Approximately one short year ago he wrote as author of another majority opinion: " 'Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree.' [¶] . . . '[N]ot every loss can be made compensable in money damages, and legal causation must terminate somewhere. In delineating the extent of a tortfeasor's responsibility for damages under the general rule of tort liability (Civ. Code, § 1714), the courts must locate the line between liability and nonliability at some point, *a decision which is essentially political.*' " (*Borer* v. *American Airlines, Inc.* (1977) 19 Cal.3d 441, 446-447 [138 Cal.Rptr. 302, 563 P.2d 858]; italics added.)

The restraints suggested in *Borer* are particularly applicable when public liability is sought to be extended, as in the instant case. In *Peter W.* v. *San Francisco Unified Sch. Dist.* (1976) 60 Cal.App.3d 814 [131 Cal.Rptr. 854], plaintiff sought to create a new area of school district liability for "educational malpractice." In concluding liability should *not* be extended, the court stated: "[J]udicial recognition of such duty . . . is initially to be dictated or precluded by considerations of public policy. . . . '[I]n the case of a public agency defendant, the extent of its powers, the role imposed upon it by law and the limitations imposed upon it by budget; and finally, the moral imperatives which judges share with their fellow citizens—such are the factors which play a role in the determination of duty. . . .' (*Raymond* v. *Paradise Unified School Dist.*, *supra*, 218 Cal.App.2d 1, 8-9 . . . .) [¶] In *Rowland* v. *Christian* (1968) 69 Cal.2d 108 . . . the Supreme Court used similar terminology in defining various public policy considerations as exceptional factors which might alone warrant *non*liability for negligence. . . . [¶] . . . [T]he major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. . . . (*Rowland* v. *Christian*, *supra*, 69 Cal.2d 108 at pp. 112-113 . . . .)" (*Id.*, at pp. 822-823.)

Obviously, the factors mentioned by us in *Rowland* and relied on in *Peter W.*—a case closely in point with the instant case—should persuade us to exercise the restraint urged in *Borer*. Here the district could not

foresee the particular harm to plaintiff; the certainty plaintiff would suffer harm as a truant was no greater than had he been properly dismissed from school on the day in question; there is only remote connection between the district's alleged negligence and the injury suffered; there is little if any moral blame in the district's conduct; the burden on the district is, as stated, insurmountable; the effect of imposing liability on the district will be negative and far-reaching; and the cost of insurance, even if available, will impose a burden the district may well not be able to overcome.

The judgment should be affirmed.

**RICHARDSON, J.**—I respectfully dissent and, agreeing with the reasoning and conclusions of Justice Clark in his dissent, only wish to add the following.

As a policy matter I oppose the imposition of civil liability upon a school district for injuries sustained off the school premises by a truant school pupil who has voluntarily and knowingly left the school premises during school hours. In my view, the fastening of liability on a school under these circumstances goes too far. Just 10 years ago in *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], at page 734, we repeated the wise admonition of Dean Prosser that whether a duty of care exists turns on " '. . . whether the plaintiff's interests are entitled to legal protection against the defendant's conduct . . . . "Duty" is not sacrosanct in itself, but only an *expression of the sum total of those considerations of policy* which lead the law to say that the particular plaintiff is entitled to protection.' (Prosser, Law of Torts, *supra* [3d ed. 1964], at pp. 332-333.)" (Italics added.)

These "considerations of policy" in the case before us should, among other things, include the fundamental function, purpose, and role of a school and its staff, the nature and probable degree of supervision required to prevent truancy, the physical variables of entrances and exits to school grounds, the financial costs of adequate supervision to prevent truancy, the relative moral culpability of pupil, parent, and school administration, the historical experience of schools in the supervision of pupils, truant and nontruant, the expense of adequate insurance to cover the extension of liability herein, and other factors. Weighing these different considerations, I conclude that for policy reasons we should not impose such a duty of care on a school district. A line should be drawn

limiting a school's liability to injuries to a pupil which occur on school property, or when the pupil is transported to, or participating in, a school-sponsored or school-related activity, in the manner contemplated by Education Code section 44808 (formerly § 13557.5).

The instant case involved a truant who was injured at an intersection four blocks from the schoolyard by a third party motorcyclist. I cannot say that the next case may not involve a truant who without anyone's permission or knowledge deliberately slipped away from school unnoticed, hopped a freight train and was injured when he fell off a car four days later in Duluth, Minnesota.

We should recognize that some children's activities are not risk-proof. One of the continuing hazards, by reason of the very nature of a school's operations, is that a school child during school hours, purposely and surreptitiously may escape from the schoolyard and the school environment and run off on a lark of his own and thereby be injured. If this happens, the event is unfortunate—perhaps tragic—indeed, but I would not require that the liability protection of a school district must, like a shadow, follow the youngster as he wanders around town.

I believe this is what the Legislature had in mind in its enactment of Education Code section 44808 (formerly 13557.5).

Mosk, J., concurred.

Respondent's petition for a rehearing was denied December 20, 1978. Mosk, J., Clark, J., and Richardson, J., were of the opinion that the petition should be granted.