984 F.2d 1033
 Jennifer MARTIN; Elizabeth Martin, By and Through their
Guardian ad Litem, Vikki MARTIN; and Vikki
Martin, individually, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
Jennifer MARTIN; Elizabeth Martin, By and Through their
Guardian ad Litem, Vikki MARTIN; and Vikki
Martin, individually, Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant-Appellant.
 Nos. 92-15322, 92-15611 and 92-15593.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 15, 1992.
Decided Jan. 28, 1993.
 
 Don E. Bailey, Carnes & Bailey, San Francisco, CA, for plaintiffs-appellants-cross-appellees.
 Henry D. Gabriel, U.S. Dept. of Justice, Washington, DC, for defendant-appellee-cross-appellant.
 Appeal from the United States District Court for the Northern District of California.
 Before: GOODWIN, O'SCANNLAIN, and RYMER, Circuit Judges.
 RYMER, Circuit Judge:
 
 
 1
 Jennifer Martin was abducted and raped while on an outing from a day care center operated by the government.[1] Her sister, Elizabeth, was also on the outing and was aware that Jennifer had disappeared. Elizabeth and the children's mother, Vikki, learned what had happened to Jennifer after Jennifer had been found by the police. All three brought suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) & 2671-80.
 
 
 2
 Vikki and Elizabeth appeal the summary judgment entered on their claims for negligent infliction of emotional distress. The district court held in a reported opinion, Martin By and Through Martin v. United States, 779 F.Supp. 1242 (N.D.Cal.1991), that no duty of care to avoid negligently inflicting emotional distress was owed to the mother or sister, who were neither "bystanders" nor "direct victims" of the government's negligence in supervising Jennifer. We agree with the district court that summary judgment on both claims is proper.
 
 
 3
 Jennifer's claim for negligent supervision went to trial, and she was awarded $200,000 in economic damages and $600,000 in non-economic damages. The United States cross-appeals from the district court's decision that the Fair Responsibility Act, California Civil Code §§ 1431.1-1431.5 (Proposition 51), abrogating the rule of joint and several liability for non-economic damages and mandating that tortfeasors will be liable in relation to their percentage of fault, does not apply to Jennifer's action because intentional conduct was involved. The district court's opinion does not consider Weidenfeller v. Star & Garter, 1 Cal.App. 4th 1, 2 Cal.Rptr.2d 14 (1991), which held that § 1431.2 applies to actions in which one tortfeasor acts intentionally and the other negligently. Because we are not convinced the California Supreme Court would hold otherwise, the district court should follow Weidenfeller.
 
 
 4
 We have jurisdiction, 28 U.S.C. §§ 1291 & 1346(b), and affirm in part and reverse in part.
 
 
 5
 * Jennifer Martin, a six-year old girl, her seven-year old sister Elizabeth, and seven other children were taken on an outing to Monterey Veterans Memorial Park while they were under the supervision of Sal Maene, an employee of the United States and then director of the Presidio of Monterey Youth Center. Jennifer became separated from the group on account of Maene's negligence. Some of the children, possibly including Elizabeth, saw Jennifer behind a recreational vehicle. Maene saw the RV drive away. All of the children, including Elizabeth, looked for Jennifer, but after ten minutes Maene called off the search, communicated his concern about Jennifer to the children, and took them all to the police station where he reported that Jennifer was missing.
 
 
 6
 While the group was waiting at the station, Jennifer was brought in.[2] She was rigid and apprehensive, on the verge of tears, with her shoulders turned in, her fists clenched, and her body covered with mud. Maene then took the other children back to the Center.
 
 
 7
 When Vikki arrived at the Center to pick up her daughters, Elizabeth came out screaming that Jennifer was at the police station and they would not let her go. This is the first Vikki knew of anything happening to Jennifer. Elizabeth returned to the police station with her mother.
 
 
 8
 Jennifer, Elizabeth, and Vikki sued the United States under the Federal Tort Claims Act. Jennifer's claim was for the negligent supervision which allowed her to become separated, abducted and raped. Vikki seeks recovery for negligent infliction of emotional distress on the theory that the Youth Center undertook to supervise and care for her daughters, and failed to do so by permitting Jennifer to become separated and by causing Elizabeth to participate in the search and become aware of the injury to Jennifer. Elizabeth also seeks recovery for negligent infliction of emotional distress in that she became aware that her younger sister had disappeared, participated in the search, and learned that her sister had been abducted and assaulted.
 
 
 9
 The district court granted the government's motion for summary judgment on the second and third claims, concluding that Vikki could not maintain her action because the government's negligent supervision of Jennifer was conduct directed at Jennifer, not Vikki; and that Elizabeth could not pursue hers because she also was not a direct victim of the negligence, nor had she shown the contemporaneous and sensory perception of the abduction and rape of her sister required for bystander liability. After trial on the merits of Jennifer's claim, the district court awarded $200,000 in economic damages and $600,000 in non-economic damages.
 
 
 10
 Vikki and Elizabeth appeal the summary judgments; the United States does not appeal the district court's finding of liability in favor of Jennifer or the amount of damages, but challenges its failure to apply California Civil Code § 1431.2.
 
 II
 
 11
 We review a grant of summary judgment de novo. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). We determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Fu-Kong Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 III
 
 12
 Vikki and Elizabeth contend that the district court misapplied California law concerning liability for negligent infliction of emotional distress under the "bystander" rule of Dillon v. Legg, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), as to Elizabeth, and under the "direct victim" rule of Molien v. Kaiser Found. Hospitals, 27 Cal.3d 916, 923, 167 Cal.Rptr. 831, 616 P.2d 813 (1980), as to both Elizabeth and Vikki.
 
 
 13
 * Elizabeth argues that there is a special relationship between young children and those who undertake their care and supervision such that Elizabeth was a direct victim of Maene's negligent supervision of Jennifer. Vikki argues that because she had entrusted the care of Jennifer and Elizabeth to Maene, he stood in loco parentis and owed a duty directly to her so that she, too, was a direct victim of his negligent supervision. They contend that the district court erred in failing to recognize that the direct victim rule is applicable whenever the defendant breaches a duty of care owed directly to the plaintiff, contrary to Burgess v. Superior Ct., 2 Cal.4th 1064, 1074, 9 Cal.Rptr.2d 615, 831 P.2d 1197 (1992) (duty may be assumed by the defendant, be imposed on the defendant as a matter of law, or may arise from a relationship between the defendant and the plaintiff), Christensen v. Superior Court, 54 Cal.3d 868, 2 Cal.Rptr.2d 79, 820 P.2d 181 (1991), Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., 48 Cal.3d 583, 257 Cal.Rptr. 98, 770 P.2d 278 (1989), and Molien v. Kaiser Found. Hospitals, 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980).
 
 
 14
 Without repeating the district court's comprehensive analysis of California authority, we agree with its conclusion that Maene's negligent supervision of Jennifer was directed at Jennifer, not at Vikki or Elizabeth. There is no question the day care center owed a duty to Elizabeth and Jennifer not to supervise them negligently; Jennifer recovered on this theory. But Elizabeth's argument that by virtue of a special relationship between young children and supervisors, the supervisor has a duty to all children under his care not to let harm occur to any of them that causes emotional distress to one of them, lacks support in California law. By the same token, as the district court held, Vikki's claim that she is entitled to recovery under the direct victim rule because she was Jennifer and Elizabeth's mother and Maene owed her a duty not to supervise her children negligently goes beyond any duty heretofore recognized by California courts.
 
 
 15
 In Burgess the court found that a doctor has a duty to a mother to prevent harm to her child during childbirth, since there was a preexisting physician-patient relationship with the mother during childbirth, and any treatment for the fetus could only be accomplished with the mother's consent and with impact to her body. Christensen held that a person who provides funeral services has a duty to close relatives of the deceased, for whose benefit the funeral or related services take place, which is breached when the remains are outrageously mishandled. In Marlene F. a psychotherapist who was treating both mother and son for relationship problems violated a duty of care to the mother by molesting the son. And in Molien, the doctor who misdiagnosed a patient as having syphilis and who affirmatively acted to have that misdiagnosis, together with a recommendation to seek treatment, communicated to the patient's spouse, breached a duty of care to the spouse. In each of these direct victim cases, the defendant's negligent conduct was directed at the plaintiff as well as the injured party. When, however, negligence that causes injury to a third-party collaterally results in the plaintiff's emotional distress, but the tort is not also to the plaintiff, California courts have been reluctant to find a duty and allow recovery for the negligent infliction of emotional distress. See, e.g., Ochoa v. Superior Court, 39 Cal.3d 159, 216 Cal.Rptr. 661, 703 P.2d 1 (1985) (doctor has no duty to parents of patient to provide adequate medical care to the patient since negligence was not directed at the parents);[3] Schwarz v. Regents of Univ. of Cal., 226 Cal.App.3d 149, 276 Cal.Rptr. 470 (1990) (psychotherapist has no duty to patient's father regarding therapy given to patient), review denied.
 
 
 16
 Vikki and Elizabeth rely upon a number of cases which have imposed a duty on those who care for children to protect children under their care, see, e.g., Fowler v. Seaton, 61 Cal.2d 681, 688, 39 Cal.Rptr. 881, 394 P.2d 697 (1964); Wallace v. Der-Ohanian, 199 Cal.App.2d 141, 144, 18 Cal.Rptr. 892 (1962); Hoyem v. Manhattan Beach City Sch. Dist., 22 Cal.3d 508, 513, 150 Cal.Rptr. 1, 585 P.2d 851 (1978); Pamela L. v. Farmer, 112 Cal.App.3d 206, 169 Cal.Rptr. 282 (1980), but none supports imposing a duty upon a caretaker not negligently to cause emotional distress to a relative of the child being negligently supervised. Fowler concerned a day care nursery which breached a duty to children for supervision and protection. In Wallace, a camp owner breached the duty owed to an 11-year old girl to protect her from sexual molestation. The same duty was imposed upon public schools in Hoyem, and upon the wife of a man with a prior history of molestation to children she invited to use their pool when only the husband was home in Pamela L. v. Farmer. These cases stand for the undisputed proposition that a day care center has a duty to children such as Jennifer to protect them from harm. None, however, suggests that the Youth Center had a duty to protect Jennifer's mother or her sister from emotional distress arising from harm to Jennifer.
 
 
 17
 Vikki points to Phyllis P. v. Superior Court, 183 Cal.App.3d 1193, 228 Cal.Rptr. 776 (1986), as a child-care case which she argues does recognize a direct duty to a parent properly to supervise a child entrusted to the care of a school. Although closer, we agree with the district court that it does not go so far. School officials had been told by eight-year old Ciera P. that she had been sexually molested a number of times by a 13-year old male student. They placed her in a program of psychological treatment, but did not notify her mother of the assaults or seek consent for the counseling. Ultimately she was raped. The court held that because of the special relationship between persons standing in loco parentis to Ciera P. and her mother, the school "had a duty to notify the [mother] upon learning of the first series of sexual assaults upon Ciera." 183 Cal.App.3d at 1196, 228 Cal.Rptr. 776. The school's "cover-up" kept the mother from doing anything about the first assaults or preventing the final one. Thus, Phyllis P. imposes a duty on the caretaker to inform the mother of sexual assaults on her daughter, not to prevent the assaults--which is a duty owed directly to the child. Otherwise, there would have been no need to discuss whether a duty existed to inform the parent of sexual assaults.
 
 
 18
 Finally, the Martins rely on the recent appellate decision in Huggins v. Longs Drug Stores California, Inc., 11 Cal.App.4th 550, 14 Cal.Rptr.2d 77 (1992), which held that parents could recover for negligent infliction of emotional distress from a pharmacy which had given improper dosage directions for medication for their infant son. The duty of care, however, was to the parents themselves, not the infant, as it was they who had the prescription filled and who were to administer the drug. Huggins is therefore in line with Burgess, Christensen, and Marlene F., requiring a relationship between the plaintiff and defendant which gives rise to a duty to avoid the tort causing injury.
 
 B
 
 19
 Elizabeth contends that she is also within the bystander rule because she witnessed and perceived all significant occurrences except for the abduction and assault on Jennifer. She further argues that the district court could not determine as a matter of law that the sole cause of her distress came from learning of Jennifer's abduction and rape, as the evidence raises a triable issue whether her trauma was caused by her perception that her sister had disappeared and could not be found, and her then becoming aware that Jennifer was being held at the police station in an apprehensive condition. We need not address this latter contention, for we agree with the district court that Elizabeth lacked contemporaneous perception of an injury-causing event.
 
 
 20
 Bystander duty is recognized only when the bystander (1) is closely related to plaintiff, (2) is present at the scene of the injury producing event at the time it occurs and is then aware that it is causing injury to the victim, and (3) suffers emotional distress beyond that which would be anticipated in a disinterested witness. Burgess, 9 Cal.Rptr.2d at 618 (quoting Thing v. La Chusa, 48 Cal.3d 644, 647, 257 Cal.Rptr. 865, 771 P.2d 814 (1989)). The first and third criteria are obviously met in this case. The second, however, is not. Even though Elizabeth was aware that her sister had been separated from the group, and may have sensed something else was wrong, the evidence is uncontroverted that she was unaware of the abduction or rape. At most, she was aware of the consequences of injury-causing acts, which does not suffice under California law. See Wilks v. Hom, 2 Cal.App.4th 1264, 3 Cal.Rptr.2d 803, 807 (1992) (plaintiff must be at the scene and be sensorially aware of the accident and the necessarily inflicted injury); Ortiz v. HPM Corp., 234 Cal.App.3d 178, 285 Cal.Rptr. 728 (1991) (wife saw husband being crushed in machine), review denied.
 
 
 21
 In Wilks, the plaintiff saw her house blow up, and knew that her child was in the house. Though the plaintiff did not actually see her child become injured, she obviously knew that the explosion was causing the child injury, and thus the court held that a bystander duty existed. Similarly in Ortiz, the wife of a machinist found her husband already trapped, in obvious pain. Though she did not see him fall into the machine, the court held that her personal observation of the event while it was occurring supported a cause of action. Id. In so holding, Ortiz distinguished Thing v. La Chusa where the plaintiff was told that her son had been hit by a car, raced to the scene, and saw him bloodied and unconscious. As the court in Ortiz noted, the plaintiff in Thing only saw the consequences of the event, not the event itself. See also Hathaway v. Superior Court, 112 Cal.App.3d 728, 169 Cal.Rptr. 435 (1980) (recovery denied to parents who see child one minute after child received an electrical charge because parents only observed consequences of accident); Parsons v. Superior Court, 81 Cal.App.3d 506, 146 Cal.Rptr. 495 (1978) (recovery denied to parents who come upon wreckage of daughter's car but did not see accident); Fife v. Astenius, 232 Cal.App.3d 1090, 284 Cal.Rptr. 16, 18 (1991) (denying recovery because plaintiff, though at the scene of the accident, was not aware that daughter was involved in accident at the time they heard the collision). Likewise here, Elizabeth, though a participant in the sense that she was at the outing, knew her sister was missing, and helped in the futile search, was neither percipient to the abduction or rape which injured Jennifer nor so situated as to know that injury was necessarily occurring. However regrettable, her awareness came as a consequence of, not as a concomitant to, the government's negligent supervision and her sister's injury.
 
 
 22
 Neither party addresses the public policy considerations which inform the court's analysis of whether to impose liability for negligently caused emotional distress. See Thing, 48 Cal.3d at 661-67, 257 Cal.Rptr. 865, 771 P.2d 814; Burgess, 2 Cal.4th at 1079-80, 9 Cal.Rptr.2d 615, 831 P.2d 1197.[4] However, we agree with the district court that expansion of liability beyond that already recognized is not indicated. Accordingly, summary adjudication was proper as to both claims.
 
 IV
 
 23
 The government argues that the district court incorrectly determined that California Civil Code § 1431.2(a), which mandates apportionment of non-economic damages, does not apply to actions where one tortfeasor is intentional and the other is negligent. The Martins contend that their action is not based on comparative fault principles, and that there is no basis for apportionment where, as in this case, the defendant is held liable for negligently failing to prevent the very harm (plaintiff's kidnapping and rape) which defendant had a duty to prevent.
 
 Section 1431.2(a) provides:
 
 24
 In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount.
 
 
 25
 Cal.Civ.Code § 1431.2(a).
 
 
 26
 The government urges us to follow Weidenfeller v. Star & Garter, 1 Cal.App.4th 1, 2 Cal.Rptr.2d 14, 16 (1991), which held that § 1431.2 applies to cases in which one tortfeasor acts intentionally and the other negligently, but which the district court's opinion in this case did not consider. The Martins argue that Weidenfeller is inconsistent with California law, is wrong, has been repudiated by two later decisions, Miller v. Stouffer, 9 Cal.App.4th 70, 11 Cal.Rptr.2d 454 (1992) reviewed denied, (1992), and Rashtian v. BRAC-BH, Inc., 9 Cal.App.4th 1847, 12 Cal.Rptr.2d 411 (1992), and is contrary to the purpose and plain language of Proposition 51.
 
 
 27
 Weidenfeller is an intermediate state appellate court decision, which we are less strictly compelled to follow than decisions from the state's highest court, Ogden Martin Systems v. San Bernardino County, 932 F.2d 1284, 1289 (9th Cir.1991) (declining to follow state appellate court decision on issue which state supreme court had not commented on), but which we must nevertheless give weight to unless convinced that the highest court would decide otherwise. Commissioner v. Estate of Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). We are not persuaded that Weidenfeller interprets § 1431.2 incorrectly, or that the California Supreme Court would disagree.
 
 
 28
 In Weidenfeller, the plaintiff was the victim of an unprovoked armed assault in the parking lot of a bar. He alleged that the failure to provide adequate lighting and security were substantial factors in causing his injuries. The jury attributed 75 percent fault to the assailant with the remainder allocated between the bar defendants and Weidenfeller. Weidenfeller made the same argument that the Martins do here, that this is not an action based upon comparative fault because one tortfeasor's conduct was intentional. The court rejected the argument because it contravened the purpose of the statute "and the common sense notion that a more culpable party should bear the financial burden caused by its intentional act." 1 Cal.App.4th at 6, 2 Cal.Rptr.2d 14. The court also noted that the intentional tortfeasor was not trying to shift its financial burden to a negligent party, rather the injured party was attempting to transfer the intentional actor's responsibility to the negligent tortfeasor. It therefore declined to interpret the statute such that it never applies to both intentional and negligent tortfeasors.
 
 
 29
 We cannot say that the California Supreme Court would read § 1431.2(a) differently in this case. It literally applies to any personal injury action, which Jennifer's is. In any such action, liability of each defendant for non-economic damages is to be several, not joint. The clause "based upon principles of comparative fault," instructs how "the liability of each defendant" is to be determined.
 
 
 30
 In addition to comporting with the plain meaning of the statute, Weidenfeller is consistent with California cases which have apportioned liability based upon comparative fault despite differences in the fault of the parties. See, e.g., Safeway Stores, Inc. v. Nest-Kart, 21 Cal.3d 322, 146 Cal.Rptr. 550, 579 P.2d 441 (1978) (apportioning liability between strict liability and negligent tortfeasors); Sorensen v. Allred, 112 Cal.App.3d 717, 169 Cal.Rptr. 441 (1980) (apportioning liability between a negligent plaintiff and a willful defendant). Moreover, to apply § 1431.2(a) when intentional actors are involved does not violate the principle that intentional tortfeasors should not be able to shift the financial burden to a negligent party, since in a case such as this the opposite is occurring. Cf. Cal.Code Civ.Proc. § 875(d) (intentional tortfeasor not entitled to contribution).
 
 
 31
 The Martins' argument that Weidenfeller has been repudiated by Miller v. Stouffer and Rashtian v. BRAC-BH, Inc., is misplaced as these cases concern vicarious liability, not liability among joint tortfeasors. The Martins also argue that Li v. Yellow Cab Co., 13 Cal.3d 804, 826, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975), precludes the application of comparative negligence principles to intentional tortfeasors because the court refused to extend its holding to encompass intentional tortfeasors. Li did not concern an intentional tortfeasor, however, and preceded § 1431.2; it does not persuade us to depart from Weidenfeller.
 
 
 32
 We therefore reverse the district court's determination that Civil Code § 1431.2(a) does not apply to cases in which one tortfeasor acts intentionally and the other negligently, and remand for proceedings consistent with this opinion.[5]
 
 
 33
 Each party shall bear their own costs for this appeal.
 
 
 34
 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
 
 
 
 [1]
 The person who abducted Jennifer is not a named defendant
 
 
 [2]
 Jennifer had in fact been abducted in the RV, taken to a nearby high school, and raped. She was then dropped off at a shopping center, where she was picked up by the police
 
 
 [3]
 Since the mother was percipient to the grossly improper treatment, the court held that she could recover under the bystander theory. Ochoa, 39 Cal.3d at 170, 216 Cal.Rptr. at 669, 703 P.2d at 8
 
 
 [4]
 The existence of a duty in California is determined by "the foreseeability of the risk and a weighing of policy considerations for and against the imposition of liability." Burgess, 2 Cal.4th at 1072, 9 Cal.Rptr.2d 615, 831 P.2d 1197. In Burgess, the court weighed the following policy considerations, in addition to foreseeability, in determining whether a duty existed:
 the degree of certainty that plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.
 Id. 2 Cal.4th at 1079-80, 9 Cal.Rptr.2d 615, 831 P.2d 1197 (quoting Christensen v. Superior Court, 54 Cal.3d 868, 2 Cal.Rptr.2d 79, 88, 820 P.2d 181 (1991)).
 
 
 [5]
 We express no opinion on an argument the Martins raised in the district court, that § 1431.2(a) cannot apply unless the other tortfeasor is joined as a defendant