[Civ. No. 46006. Second Dist., Div. Five. Jan. 6, 1976.]

RENE CASTRO et al., Plaintiffs and Appellants, v.
LOS ANGELES BOARD OF EDUCATION et al.,
Defendant and Respondent.

**COUNSEL**

Hidalgo & Aranda and Manuel Aranda, Jr., for Plaintiffs and Appellants.

Veatch, Snow, Carlson, Dorsey & Quimby, Frederick C. Quimby, Jr., and Herbert F. Blanck for Defendant and Respondent.

234

## Opinion

**STEPHENS, Acting P. J.**—This is an appeal from an order sustaining a demurrer without leave to amend the second amended complaint for wrongful death filed by parents of the decedent.

The original complaint alleged that the death of decedent, a high school student, occurred while he was participating with his R.O.T.C. unit in a field trip within California which was organized by and under the supervision and control of agents, representatives and employees of respondent board of education, and that his death occurred as a result of their negligence. Respondent's first demurrer to the complaint (which objected in substance to a misjoinder of parties) was sustained with leave to amend. The first amended complaint restated the cause of action, and the proper parties were joined. Respondent then demurred to the first amended complaint, alleging failure to state a cause of action in that Education Code section 1081.5 as amended specifically exempted respondent from any liability for injuries or damages, including death, sustained by a student during a field trip or excursion. Appellants again amended their complaint by deleting the words "field trip" and substituting therefor the words "summer camp, bivouac, or summer training." Respondent's demurrer to the second amended complaint alleged that section 1081.5 was still applicable. The court agreed, sustained the demurrer without leave to amend, and dismissed the action pursuant to Code of Civil Procedure section 581, subdivision 3.

The question before us is whether subdivision (d) of Education Code section 1081.5, providing respondent with immunity from liability, is applicable. The portion of the section in question states: "All persons making the field trip or excursion shall be deemed to have waived all claims against the district or the State of California for injury, accident, illness, or death occurring during or by reason of the field trip or excursion. All adults taking out-of-state field trips or excursions and all parents and guardians of pupils taking out-of-state field trips or excursions shall sign a statement waiving such claims."

In order to answer this question, we necessarily commence our analysis with the general statutory provision imposing liability upon a governmental entity. Government Code section 815.2, subdivision (a), provides: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of

his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." As stated in 4 Witkin, Summary of California Law (Torts, § 94, pp. 2396-2397), "This basic provision carries over the respondeat superior liability previously imposed on school districts, making it applicable to all public entities. Hence, the decisions applying the Educational Code provision are still good law: 'The pattern of vicarious liability for employees' negligence is essentially identical under both statutes. We have found no evidence indicating an intention on the part of the Legislature to alter the duty to provide supervision of students while on school grounds, the standard of care required of those undertaking to provide supervision, or the amount of evidence necessary to support a finding of negligence. . . .' [Citing *Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747 (87 Cal.Rptr. 376, 470 P.2d 360), and *Biggers* v. *Sacramento City Unified Sch. Dist.* (1972) 25 Cal.App.3d 269, 274 (101 Cal.Rptr. 706).]" Continuing, Witkin states (at p. 2398, § 95): "The distinct problem of the duty to supervise pupils *not on school property* is covered in Educ.C. 13557.5, enacted in 1972. The district is not liable for pupils' conduct or safety unless (a) there has been an *undertaking to provide transportation* to and from school or to sponsor a *school activity* off school premises, or (b) responsibility or liability has been 'otherwise specifically assumed.' The liability in the event of a specific undertaking is imposed 'only while such pupil is or should be under the immediate and direct supervision of an employee of such district or board.' " (Italics original.)

It is clear then that absent the applicability of the waiver provisions of section 1081.5, the district could be liable for the negligent acts of its employees.

We observe a continuity of design in the sections to which reference was just made. Section 815.2 (Gov. Code) recognizes that school districts are liable for the negligence of their employees. Section 13557.5 (Ed. Code) limits that liability to the schoolground area *unless* the district "has undertaken to provide transportation for such pupil to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, has otherwise specifically assumed such responsibility or liability or has failed to exercise reasonable care under the circumstances."

"In the event of such a specific undertaking, the district . . . shall be liable or responsible for the conduct or safety of any pupil only while

such pupil is or should be under the immediate and direct supervision of an employee of such district . . . ."

Section 1081.5 (Ed. Code) further limits the district's liability by way of a "deemed" waiver of responsibility by the pupil-participant on a *field trip* or *excursion.* Certainly there would have been no purpose in the Legislature's *adding* section 13557.5 to the Education Code at its 1972 session if by its amendment of section 1081.5 of the same code, it provided absolute immunity from liability for the same away-from-school activity. We note the difference in words used to describe the *events* delineated in section 13557.5 (school sponsored activity) and that event referred to in the immunity statute, section 1081.5 (field trip or excursion).[1]

The Legislature, by these sections, recognized that: not all educational facilities can be provided within the confines of each school's property. To accomplish a school's educational aims, it therefore is necessary for students to accomplish portions of their study off the school's property. Students who are off of the school's property for required school purposes are entitled to the same safeguards as those who are on school property, within supervisorial limits. Students who participate in non-required trips or excursions, though possibly in furtherance of their education but not as required attendance, are effectively on their own; the voluntary nature of the event absolves the district of liability.

As we construe the governing sections, we conclude that where a "school-sponsored activity," i.e., one that requires attendance and for which attendance credit may be given, is involved, the event is a "specific undertaking" of the district. In such a case "the district . . . shall be liable or responsible for the . . . safety of any pupil only while such pupil is or should be under the immediate and direct supervision of an employee of such district." (Ed. Code, § 13557.5.)[2]

In the light of the above conclusions, does the second amended complaint set forth a cause of action? It provides:

---

[1]"Field trip" is defined as a visit made by students and usually a teacher for purposes of first hand observation (as to a factory, farm, clinic, museum). "Excursion" means a journey chiefly for recreation, a usual brief pleasure trip, departure from a direct or proper course, or deviation from a definite path.

[2]We recognize the possibility of a "field-trip or excursion" being permitted even during a "school-sponsored activity" and believe that the last paragraph of section 13557.5 provides for that very circumstance.

"10. Plaintiffs are informed and believe, and based on such information and belief allege that at all times mentioned herein Wilson High School, as part of its education program, created, and permitted to be created, a Junior ROTC Corps within its control and supervision. That said Junior ROTC Corps was created, and permitted to be created, and was under the supervision and control of the Los Angeles Board Of Education.

"11. That at all times mentioned herein the decedent, Jose Luis Castro, was a member of the Wilson High School Junior ROTC program.

"12. That on or about April 13, 1973, while a member of the Junior ROTC unit, as above described, and while under the supervision of representatives and agents of the Los Angeles Board Of Education, a summer camp, bivouac and summer training was organized for the Wilson High School ROTC cadets. Said summer camp, bivouac and summer camp training and said ROTC unit were under the control, direction and supervision of the defendants, and each of them."

These allegations are sufficient to place the plaintiffs within the ambit of section 13557.5 and not under the disability of immunity provisions of section 1081.5. The fact that in the original and first amended complaints the activity in which the decedent was a participant was designated as a "field trip or excursion" is not binding upon plaintiffs. The activity itself was adequately pleaded and the correction of designation is not a change of fact merely to avoid the effect of a demurrer.

Certainly the plaintiffs should be provided the forum in which to prove, if they can, that the ROTC "summer camp, bivouac and summer training" was just as much a part of the school curriculum as a school-sponsored band or orchestra performance at an off-premises event.

The judgment is reversed.

Ashby, J., and Hastings, J., concurred.