[No. A074351. First Dist., Div. Two. July 1, 1997.]

STEVEN WOLFE, a Minor, etc., Plaintiff and Appellant, v.
DUBLIN UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

**COUNSEL**

Gordon, DeFraga, Watrous & Pezzaglia, Allan DeFraga and Richard S. Bruno for Plaintiff and Appellant.

Imai, Tadlock & Keeney, T. G. Tadlock and Jeffrey C. Tung for Defendant and Respondent.

## OPINION

**LAMBDEN, J.**—In this personal injury action we examine the immunities afforded school districts under sections 44808 and 35330 of the Education Code (all unspecified section references are to that code) and uphold a summary judgment granted in favor of defendant Dublin Unified School District (the district) based on the immunity provided by section 35330 for injuries students sustain while on field trips.

## BACKGROUND

Plaintiff Steven Wolfe is a minor suing through parents acting as his guardians ad litem. He alleged he was injured when, on the way home from a "field trip" with his first grade class from an elementary school in the district, the car of the parent driver with whom he was riding collided with a truck at the intersection of Highway 4 and Sellers Avenue in an unincorporated area of eastern Contra Costa County. He sued the district and the driver, alleging negligence, and the driver cross-complained against the district. The summary judgment, granted to the district alone on Wolfe's complaint, left pending his action against the driver, and the driver's cross-complaint. The resulting summary judgment resulting in dismissal is appealable as finally disposing of all issues between these parties. (*Justus* v. *Atchison* (1977) 19 Cal.3d 564, 568 [139 Cal.Rptr. 97, 565 P.2d 122]; *Day* v. *Papadakis* (1991) 231 Cal.App.3d 503, 508 [282 Cal.Rptr. 548].)

The material facts were undisputed. The October 5, 1993, trip was to the Smith Family Farm and was made during normal school hours. It was organized by first grade teachers, approved by the principal and involved all three first grade classes at Wolfe's school. Students needed written parental consent (a permission slip) to participate. Those not having the consent would have remained at the school in alternative activities, although it turned out that all students attending that day did obtain the consent and go. Attendance either way would count for purposes of state funding apportionment.

To save transportation costs, it was decided to have volunteer drivers take the students in private cars. Teachers solicited from among the parents, and each volunteer, including the parent who drove Wolfe, signed a form certifying his or her age, insurance coverage and driver's license, and the safe condition of his or her vehicle. All drivers left from and returned to the school, and the accident occurred on the way back.

## DISCUSSION

We review this 1996 summary judgment by settled standards (*Lopez* v. *Superior Court* (1996) 45 Cal.App.4th 705, 713-714 [52 Cal.Rptr.2d 821]) which need no explication given the purely legal questions posed in applying undisputed facts to statutory language (cf. *Engs Motor Truck Co.* v. *State Bd. of Equalization* (1987) 189 Cal.App.3d 1458, 1464 [235 Cal.Rptr. 117]).

### *The Sections*

Section 44808 (formerly section 13557.5) renders a school district not "responsible or in any way liable for the . . . safety of any pupil . . . at any time when such pupil is not on school property" unless the district has "undertaken to provide transportation for such pupil to and from the school premises," "undertaken a school-sponsored activity off the premises," "otherwise specifically assumed such responsibility or liability" or "failed to exercise reasonable care under the circumstances." Liability for "such a specific undertaking" exists where a pupil "is or should be under the immediate and direct supervision of an employee" of the district.[1] In essence, the section grants a district immunity unless a student was (or should have been) directly supervised during a specified undertaking. The language "failed to exercise reasonable care under the circumstances," while set off by an "or" as if meant to be a self-sufficient basis for liability, has correctly been construed as requiring such failure *during* one of the mentioned "undertakings." To construe it as an independent basis for liability would be to say, absurdly: A district is never liable in negligence unless it acts negligently. Also, the breach must be of a duty, a duty created through one of the undertakings. (*Torsiello* v. *Oakland Unified School Dist.* (1987) 197 Cal.App.3d 41, 47-48 [242 Cal.Rptr. 752].) "The 'reasonable care' phrase enunciates a standard of care and as such cannot exist in a vacuum; in the absence of a duty to which it applies, the phrase is meaningless." (*Id.* at p. 48.)

---

[1]Section 44808 provides: "Notwithstanding any other provision of this code, no school district, city or county board of education, county superintendent of schools, or any officer or employee of such district or board shall be responsible or in any way liable for the conduct or safety of any pupil of the public schools at any time when such pupil is not on school property, unless such district, board, or person has undertaken to provide transportation for such pupil to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, has otherwise specifically assumed such responsibility or liability or has failed to exercise reasonable care under the circumstances.

"In the event of such a specific undertaking, the district, board, or person shall be liable or responsible for the conduct or safety of any pupil only while such pupil is or should be under the immediate and direct supervision of an employee of such district or board."

Using the framework of section 44808, Wolfe contends he was under direct supervision while on a trip in which the district failed to exercise reasonable care while undertaking to provide a school-sponsored activity off school premises and transportation to and from it.

Section 35330 (formerly § 1081.5) authorizes a district to conduct "field trips or excursions," makes enabling provision for doing so and, in subdivision (d), creates broad immunity providing: "All persons making the field trip or excursion shall be deemed to have waived all claims against the district . . . for injury, accident, illness, or death occurring during or by reason of the field trip or excursion. . . ."[2] The district contends the section directly applies in this case, notwithstanding section 44808.

---

[2]Section 35330 provides in part: "The governing board of any school district or the county superintendent of schools of any county may:

"(a) Conduct field trips or excursions in connection with courses of instruction or school-related social, educational, cultural, athletic, or school band activities to and from places in the state, any other state, the District of Columbia, or a foreign country for pupils enrolled in elementary or secondary schools. A field trip or excursion to and from a foreign country may be permitted to familiarize students with the language, history, geography, natural sciences, and other studies relative to the district's course of study for such pupils.

"(b) Engage such instructors, supervisors, and other personnel as desire to contribute their services over and above the normal period for which they are employed by the district, if necessary, and provide equipment and supplies for such field trip or excursion.

"(c) Transport by use of district equipment, contract to provide transportation, or arrange transportation by the use of other equipment, of pupils, instructors, supervisors or other personnel to and from places in the state, any other state, the District of Columbia, or a foreign country where such excursions and field trips are being conducted; provided that, when district equipment is used, the governing board shall secure liability insurance, and if travel is to and from a foreign country, such liability insurance shall be secured from a carrier licensed to transact insurance business in such foreign country.

"(d) Provide supervision of pupils involved in field trips or excursions by certificated employees of the district.

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"No expenses of pupils participating in a field trip or excursion to any other state, the District of Columbia, or a foreign country authorized by this section shall be paid with school district funds. Expenses of instructors, chaperones, and other personnel participating in a field trip or excursion authorized by this section may be paid from school district funds, and the school district may pay from school district funds all incidental expenses for the use of school district equipment during a field trip or excursion authorized by this section.

"The attendance or participation of a pupil in a field trip or excursion authorized by this section shall be considered attendance for the purpose of crediting attendance for apportionments from the State School Fund in the fiscal year. Credited attendance resulting from such field trip or excursion shall be limited to the amount of attendance which would have accrued had the students not been engaged in the field trip or excursion.

"Credited attendance shall not exceed 10 schooldays except in the case of pupils participating in a field trip or excursion in connection with courses of instruction, or school-related educational activities, and which are not social, cultural, athletic or school band activities.

"All persons making the field trip or excursion shall be deemed to have waived all claims against the district or the State of California for injury, accident, illness, or death occurring during or by reason of the field trip or excursion. All adults taking out-of-state field trips or

*The Castro Decision*

We do not write on a clean slate in reconciling these two immunity provisions. The same provisions, reading the same as they do today but differently numbered, were examined 21 years ago in *Castro* v. *Los Angeles Bd. of Education* (1976) 54 Cal.App.3d 232 [126 Cal.Rptr. 537] (*Castro*). We quote from that analysis (*Castro*, *supra*, at pp. 234-236), substituting the sections' current numbers:

"[W]e necessarily commence our analysis with the general statutory provision imposing liability upon a governmental entity. Government Code section 815.2, subdivision (a), provides: 'A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.' . . . 'This basic provision carries over the respondeat superior liability previously imposed on school districts, making it applicable to all public entities. Hence, the decisions applying the Education[] Code provision are still good law . . . .' . . . 'The distinct problem of the duty to supervise pupils *not on school property* is covered in [section 44808], enacted in 1972. The district is not liable for pupils' conduct or safety unless (a) there has been an *undertaking to provide transportation* to and from school or to sponsor a *school activity* off school premises, or (b) responsibility or liability has been "otherwise specifically assumed." The liability in the event of a specific undertaking is imposed "only while such pupil is or should be under the immediate and direct supervision of an employee of such district or board."' (Italics original.)

"It is clear then that absent the applicability of the waiver provisions of section [35330], the district could be liable for the negligent acts of its employees.

"We observe a continuity of design in the sections to which reference was just made. Section 815.2 (Gov. Code) recognizes that school districts are liable for the negligence of their employees. Section [44804] (Ed. Code) limits that liability to the schoolground area *unless* the district 'has undertaken to provide transportation for such pupil to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, has otherwise specifically assumed such responsibility or liability or has failed to exercise reasonable care under the circumstances.'

excursions and all parents or guardians of pupils taking out-of-state field trips or excursions shall sign a statement waiving such claims."

" 'In the event of such a specific undertaking, the district . . . shall be liable or responsible for the conduct or safety of any pupil only while such pupil is or should be under the immediate and direct supervision of an employee of such district . . . .'

"Section [35330] (Ed. Code) further limits the district's liability by way of a 'deemed' waiver of responsibility by the pupil-participant on a *field trip* or *excursion.* Certainly there would have been no purpose in the Legislature's *adding* section [44808] to the Education Code at its 1972 session if by its amendment of section [35330] of the same code, it provided absolute immunity from liability for the same away-from-school activity. We note the difference in words used to describe the *events* delineated in section [44808] (school sponsored activity) and that event referred to in the immunity statute, section [35330] (field trip or excursion).

"The Legislature, by these sections, recognized that: not all educational facilities can be provided within the confines of each school's property. To accomplish a school's educational aims, it therefore is necessary for students to accomplish portions of their study off the school's property. Students who are off of the school's property for required school purposes are entitled to the same safeguards as those who are on school property, within supervisorial limits. Students who participate in non-required trips or excursions, though possibly in furtherance of their education but not as required attendance, are effectively on their own; the voluntary nature of the event absolves the district of liability.

"As we construe the governing sections, we conclude that where a 'school-sponsored activity,' i.e., one that requires attendance and for which attendance credit may be given, is involved, the event is a 'specific undertaking' of the district. In such a case 'the district . . . shall be liable or responsible for the . . . safety of any pupil only while such pupil is or should be under the immediate and direct supervision of an employee of such district.' (Ed. Code, § [44808].)" (Fns. omitted.)

In footnote, *Castro* added, "We recognize the possibility of a 'field-trip or excursion' being permitted even during a 'school-sponsored activity' and believe that the last paragraph of section [44808 (liability "only while such pupil is or should be under the immediate and direct supervision of an employee of such district")] provides for that very circumstance." (*Castro, supra,* 54 Cal.App.3d 232, 236, fn. 2.) It also offered: " 'Field trip' is defined as a visit made by students and usually a teacher for purposes of first hand observation (as to a factory, farm, clinic, museum). 'Excursion' means a journey chiefly for recreation, a usual brief leisure trip, departure from a

direct or proper course, or deviation from a definite path." (*Id.* at p. 236, fn. 1.)

Applying that framework to the case of a high school student who died during an off-campus " 'summer camp, bivouac and summer training' " event with his Reserve Officers' Training Corps (ROTC) unit, the court reversed a demurrer, saying the plaintiffs merited a chance to prove, "if they c[ould]," that the event "was just as much a part of the school curriculum as a school-sponsored band or orchestra performance at an off-premises event." (*Castro, supra,* 54 Cal.App.3d 232, 237.)

### The Hoyem Decision

The district initially invites us to eliminate section 44808 from consideration altogether based on a comment by our Supreme Court in *Hoyem* v. *Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508 [150 Cal.Rptr. 1, 585 P.2d 851] (*Hoyem*). *Hoyem* involved a suit against a school district for alleged negligent supervision which allowed a 10-year-old student to leave summer school during school hours and suffer injury when hit by a motorcycle at an intersection off the school grounds. (*Id.* at pp. 511-512.) A bare four-member majority reversed a demurrer and allowed the suit to proceed. Faced with the general off-premises immunity language of section 44808, the majority cited "[f]irst" the language about failure to exercise reasonable care under the circumstances, seemingly treating it as a self-sufficient exception separate from any undertaking, though without discussing what duty might be breached by that failure. (*Id.* at p. 517; but see *Torsiello* v. *Oakland Unified School Dist., supra,* 197 Cal.App.3d 41, 47-48.)

Second, the majority reasoned the Legislature, in enacting section 44808, was "principally concerned with limiting a school district's liability for injuries to pupils either before or after school hours while children were either going to school or coming home after school." (*Hoyem, supra,* 22 Cal.3d 508, 517.) This idea of legislative intent rested on a perception that the section's enactment in 1972 was in response to 1953 and 1959 decisions finding no liability for off-premises injuries—one to a student killed on his way home after school (*Girard* v. *Monrovia City School Dist.* (1953) 121 Cal.App.2d 737 [264 P.2d 115]) and one to a student's 11-year-old brother to whom an ill 6-year-old student had been released to bicycle home during school hours (*Kerwin* v. *County of San Mateo* (1959) 176 Cal.App.2d 304 [1 Cal.Rptr. 437]). Both decisions had reasoned there was no undertaking by the district to provide transportation. (*Hoyem, supra,* 22 Cal.3d at pp. 517-518.)

Limiting section 44808's reach to travel between school and home before and after school would provide a short avenue for affirming this judgment

since the injury here undisputedly occurred during school hours and while on a field trip. This would also be consistent with post-*Hoyem* decisions, which have examined section 44808 in connection with after-school incidents. (*Perna* v. *Conejo Valley Unified School Dist.* (1983) 143 Cal.App.3d 292, 294-296 [192 Cal.Rptr. 10] [two students walking home from school]; *Farley* v. *El Tejon Unified School Dist.* (1990) 225 Cal.App.3d 371, 376-377 [274 Cal.Rptr. 780] [homeward bound student leaving bus]; *Torsiello* v. *Oakland Unified School Dist., supra*, 197 Cal.App.3d 41, 46-49 [student after school but not going home]; *Brownell* v. *Los Angeles Unified School Dist.* (1992) 4 Cal.App.4th 787, 791-792, 794-798 [5 Cal.Rptr.2d 756] [student shot outside school after classes].)

We need not rest on that ground. The limited-purpose observation in *Hoyem* was an alternative rationale which, if not fairly termed dictum (*Fire Ins. Exchange* v. *Abbott* (1988) 204 Cal.App.3d 1012, 1022 [251 Cal.Rptr. 620] [when an appellate court bases its decision on alternative grounds, none is dictum]; *King* v. *Pauly* (1911) 159 Cal. 549, 554-555 [115 P. 210]), was a carefully qualified holding. It called the Legislature "principally concerned" with before- and after-school travel to and from home. (*Hoyem, supra*, 22 Cal.3d 508, 517.) "Principally" does not mean "exclusively," of course, and the point of the discussion was to stress the *Hoyem* case's "very different circumstances . . ." (*ibid.*). This same approach was taken in a footnote addressing the *Castro* holding. Rather than disapprove *Castro* for having considered section 44808 applicable to school-hours events, the majority called the *Castro* language "dicta" and found the case "distinguishable . . . because it dealt not with an allegation that the school district failed to exercise reasonable care in supervising students on school premises, but with an accident occurring at a school-sponsored ROTC outing. The *Castro* court held the district liable because the activity was school-related." (22 Cal.3d at p. 518, fn. 3.) More correctly, we observe, the *Castro* court only held the district *potentially* liable on that theory; the nature of the activity, at the demurrer stage, was still subject to proof. (*Castro, supra*, 54 Cal.App.3d 232, 237.)

*Our Case*

 Assuming, like *Castro*, a potential application of section 44808 to school-hours travel to and from school, we find the specific provisions of section 35330 applicable on our facts. The Smith Family Farm visit was a "field trip" within the meaning of section 35330. It was a visit made by student and teachers "for purposes of first hand observation (as to a factory, farm, clinic, museum). . . ." (*Castro, supra*, 54 Cal.App.3d 232, 236, fn. 1.) Whether it was a traditional farm or a "pumpkin farm," as the court termed it at the hearing, it qualified. The visit was also not required. Students did

not have to go, and any students who stayed behind at the school in alternative activities would have gotten attendance credit. "Students who are off of the school's property for *required* school purposes are entitled to the same safeguards as those who are on school property, within supervisorial limits. Students who participate in *non-required* trips or excursions, though possibly in furtherance of their education but not as required attendance, are effectively on their own; the *voluntary nature of the event* absolves the district of liability." (*Id.* at p. 236, italics added.) The fact that participating students would also receive attendance credit is obviously not determinative; field-trip immunity anticipates this will ordinarily be the case. (§ 35330, subd. (d), pars. 5 & 6; see fn. 2, *ante*.)

Wolfe contends the trip and its use of parent volunteer drivers also constituted district undertakings of "school-sponsored activity off the premises" and "transportation" of students to and from the school—both exceptions to the immunity of section 44808—and that students were under the direct supervision of the district. We do not decide those issues, for even if both sections applied, section 35330 would control.

One aspect of the *Castro* analysis, while not stated in so many words, is this: The special "field trip" provisions of section 35330 control over any overlapping application of the more general off-premises provisions of section 44808. *Castro* anticipated "the possibility of a 'field-trip or excursion' being permitted even during a 'school-sponsored activity' . . . ." (*Castro, supra*, 54 Cal.App.3d 232, 236, fn. 2.) A field trip is a special type of off-premises activity, making section 35330 the special statute, should both statutes apply. (See generally *McDonald* v. *Conniff* (1893) 99 Cal. 386, 391 [34 P. 71].) *Castro* also acknowledges section 44808's enactment in 1972 having postdated that of section 35330, but this, too, casts no doubt on giving preference to section 35330. ▮ "[T]he law does not favor a repeal by implication, but . . . where there are two or more provisions relating to the same subject matter they must, if possible, be construed so as to maintain the integrity of both. [Also], where two statutes treat of the same subject, one being special and the other general, unless they are irreconcilably inconsistent, the latter, although latest in date, will not be held to have repealed the former, but the special act will prevail in its application to the subject matter as far as coming within its particular provisions. . . ." (*People* v. *Pacific Imp. Co.* (1900) 130 Cal. 442, 445-446 [62 P. 739].) Repeals by implication are disfavored, being recognized only if two apparently conflicting laws cannot be harmonized. We are bound to maintain the integrity of both statutory provisions if the two can stand together. (*In re Manuel L.* (1994) 7 Cal.4th 229, 235-236 [27 Cal.Rptr.2d 2, 865 P.2d 718]; *Penziner* v. *West American Finance Co.* (1937) 10 Cal.2d 160, 176 [74 P.2d

252].) Finally, any repeal by implication "effects a limited repeal of the former statute to the extent that the two are irreconcilable. [Citations.]" (*Governing Board* v. *Mann* (1977) 18 Cal.3d 819, 828 [135 Cal.Rptr. 526, 558 P.2d 1].)

■ The *Castro* analysis is consistent with those principles. It harmonizes the sections and preserves the integrity of each, giving precedence to section 35330 only to the extent necessary to preserve its more specific intent. Wolfe criticizes *Castro*'s emphasis on the voluntary or nonrequired nature of a field trip to distinguish it from a school-sponsored activity (§ 44808): "Students who are off of the school's property for required school purposes are entitled to the same safeguards as those who are on school property, within supervisorial limits. Students who participate in non-required trips or excursions, though possibly in furtherance of their education but not as required attendance, are effectively on their own; the voluntary nature of the event absolves the district of liability." (*Castro, supra*, 54 Cal.App.3d 232, 236.) Wolfe proposes instead: "The difference between a 'field trip' that is immune and a 'school-sponsored activity' that is not is and should be a matter of degree. 'Field trips' are immune unless they are raised to the level of 'school-sponsored activities.' The elevation from one to the other is commensurate with the degree of involvement by the district in initiating, planning, arranging, and supervising the activity with regard to the circumstances of each particular case. The factors to be considered in determining whether or not the school is 'sponsoring' the activity are all of those mentioned in *Castro* (voluntariness, curriculum, credit) plus any others that demonstrate the district's intent (or lack thereof) to take responsibility for the activity. This requires different levels of responsibility for different off-school events depending upon varying circumstances . . . ."

The proposal is a treacherous torrent of vagueness which would send any school district or parent running for cover. Worse yet, it would have the effect of encouraging districts and teachers to do nothing to plan or supervise field trips, and no district wanting immunity would dare utilize the transportation and other school resources specifically authorized for field trips under section 35330 (fn. 2, *ante*). *Castro* has the advantages of relative certainty and safety.

Wolfe offers hypothetical facts which he claims could pose difficult questions under *Castro*'s analysis and perhaps some anomalous results, but there is no need to explore every definitional dictum of *Castro* to resolve the case here. The undisputed facts fall squarely within section 35330, whether through common understanding or the guidelines in *Castro*. Attacking *Castro* as making too much of a legislative desire to encourage field trips through immunity, Wolfe challenges, "Is there any other instance wherein

the Legislature has ever sought to encourage an activity to the extent of granting it blanket immunity?" But section 35330 is not unique. Section 44808.5, for example, authorizes schools to release high school students to go home for lunch, with parental permission, and adds without qualification: "Neither the school district nor any officer or employee thereof shall be liable for the conduct or safety of any pupil during such time as the pupil has left the school grounds pursuant to this section."

■ "We acknowledge we are not bound by an opinion of another District Court of Appeal, however persuasive it might be. [Citation.] We respect stare decisis, however, which serves the important goals of stability in the law and predictability of decision. Thus, we ordinarily follow the decisions of other districts without good reason to disagree. [Citation.]" (*Greyhound Lines, Inc.* v. *County of Santa Clara* (1986) 187 Cal.App.3d 480, 485 [231 Cal.Rptr. 702].) No compelling reason has been advanced, on the facts of this case, for clouding 21 years of precedent under *Castro*.

■ Thus assuming for sake of argument the continuing validity of *Castro*'s view of section 44808 as potentially applying to school-hour departures and returns of students to school premises, we uphold this summary judgment based on section 35330 immunity.

### DISPOSITION

The judgment is affirmed.

Kline, P. J., and Haerle, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 17, 1997.