Filed 12/30/25; certified for publication 1/27/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| VALLEJO CITY UNIFIED SCHOOL DISTRICT,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF THE COUNTY OF SOLANO,<br><br>    Respondent;<br><br>VIONALYN CAGUIN et al.,<br><br>    Real Parties in Interest. | A173303<br><br><br>(Solano County<br>Super. Ct. No. CU2302784) |

Real parties in interest, Vionalyn Caguin (mother) and Renato Caguin (father) (together, the Caguins), suffered the incalculable loss of their 11-year-old daughter, Maria "Therese" Caguin (Therese), who committed suicide while at her father's home during her school's winter break. The Caguins sued Petitioner Vallejo City Unified School District (District), alleging the District was liable for Therese's suicide because it negligently hired and trained its staff and failed to fulfill its duty to supervise students. To wit, the Caguins alleged the District failed to protect Therese from bullying at school, unreasonably responded to her expressions of suicidal ideation, and failed to properly inform them of the same. The Caguins also brought a survival claim

for Therese's pre-death suffering caused by the District's purported negligent performance of its duty to supervise students.

The District moved for summary judgement or, in the alternative, summary adjudication, arguing that it was immune from liability for each of the Caguins' causes of action under Education Code section 44808.[1] The trial court denied the motion. It found triable issues of material fact as to whether the District exercised reasonable care and whether Therese suffered injury on campus due to the District's negligence. Given those findings, the court held that our Supreme Court's decision in *Hoyem v. Manhattan Beach City School District* (1978) 22 Cal.3d 508 (*Hoyem*) controlled and section 44808 was inapplicable.

The District filed for writ relief, requesting this court to direct the trial court to vacate its order denying summary judgment and issue a new order granting the District's motion. The District argued that the trial court's interpretation of immunity under section 44808 and of *Hoyem* is driven by a " 'linguistic ambiguity' " in the statute, which the weight of authority has recognized is not viable. After preliminary briefing, we issued an order to show cause why the petition should not be granted.

We conclude the District is statutorily immune from liability for harm to the Caguins caused by Therese's off-campus suicide which occurred when she was not and should not have been under the immediate and direct supervision of the District's employees. Therefore, the trial court erred by not granting summary adjudication on the three causes of action premised on such harm. This conclusion does not extend to the survival claim, which is premised on alleged on-campus harm to Therese that occurred when Therese

---

[1] All further undesignated statutory references are to the Education Code.

was under the supervision of the District's employees. Accordingly, we grant the petition in part and deny it in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Therese started the sixth grade in the fall of 2022 at a school operated by the District. Early in the semester, Therese got into a verbal altercation with another student, resulting in a "restorative justice reconciliation meeting" in which "[a]pologies were accepted." Two weeks later, however, another student physically assaulted Therese on campus. School staff contacted Therese's mother — though her mother later testified that she recalled being informed it was a "verbal fight" — and sent Therese home; the other student was suspended.

The night of the physical altercation, Therese emailed her teacher, Rudolph Taylor, asking to talk about the bullying by her "ex best friend" and others. She said she was "scared" and sad and had "wanted to kill [herself] ever since elementary [school]." Taylor responded the next day, telling Therese that he was on her side and inviting her to talk to him the following school day. He further told her that "[s]uicide is not something I take lightly" and encouraged her to talk to her "parents or someone close" about her struggles.

Taylor then forwarded the email exchange to the school's principal and vice principals, seeking advice. The principal added the school's mental health support provider, William Dickens, to the email chain so that Dickens would assess Therese's mental health the next school day.

The next school day, one of the vice principals emailed the group to relay that he had spoken to Therese's mother on the phone and that Therese was staying at home that day. The vice principal further stated: "I explained to Mom that [Therese] wrote in her email that she wanted to die. I asked

3

Mom was she aware that [Therese] has suicidal thoughts; and, Mom told me that she is aware that [Therese] is often sad, and she's very quiet. Mom stated that she thinks [Therese] is feeling better this morning and she should be able to return to school [tomorrow]." Dickens replied to the group: "We should also tell her mom that if [Therese] is often sad and is having these feelings it might be in her best interest to take her and be seen. She might need a medical professional to check in with her as well. Being that she said she is having feelings of suicide I would feel better with her going to see someone instead of waiting until she comes back to school being that she has anxiety about returning to school."

When Therese returned to school, Dickens met with her and performed a mental health assessment. Based on the assessment, Dickens did not perceive Therese to be a high risk for suicide.

Roughly two months later, Therese emailed Taylor again, stating that she "want[ed] to cry right now." Taylor asked her what was wrong and how he could help. Therese said she was "having a really bad day so far," to which Taylor replied he would like to help but needed more information. She did not respond via email, but Taylor testified that they spoke in person and that he referred her to Dickens.

Ten days later, Therese sent Taylor another email. She said that her "only friend dropped [her]" and that she wanted to leave school early. She expounded that school made her "feel unsafe" and was "one of the reasons [she] started cutting," expounding that her "parents already found [her] scars." She expressed a desire to be enrolled in a different school, adding, "I don't think I could even make it until it[']s [F]riday." She further stated that her mother was enrolling her in therapy, but she did not think it would help.

Taylor again sent Therese to Dickens upon receipt of the email.[2]

About a week later, Taylor checked in on Therese via email. He asked how she was feeling "emotionally, mentally and physically." Therese responded two days later that she was "fine."

Dickens testified that he checked in with Therese in-person later that month, not long before the school's winter break. He asked how she was feeling and whether she wanted to talk about the situation with her former friend. According to Dickens, Therese said she was not ready at that point, but she would be in the future.

Taylor also testified that he also checked in with Therese via email "right before or during the winter break."[3] He said that she did not respond. Taylor "thought the lack of response meant she was doing better."

During the winter break from school, Therese divided her time between her mother and father, who were divorced. She spent December 29, 2022 through January 2, 2023 with her father. On January 2, 2023, Therese committed suicide while at home with her father.

The Caguins sued the District for Therese's bullying and death, alleging four causes of action: (1) vicarious liability for the negligence of its employees in supervising students on campus and responding to Therese's mental distress; (2) breach of duties to fully implement policies for student suicide prevention; (3) survival action for Therese's pre-death injuries and suffering due to the District's and its employees' negligence; and (4) negligent hiring, supervision, and retention of employees who did not properly address

---

[2] There is no evidence that Taylor responded to Therese's email, and he testified that he did not recall doing so because "at [that] point my — again, my go-to was to get Mr. Dickens involved because he was the mental health specialist."

[3] There is no such email in the record on appeal.

the bullying or Therese's mental condition. The harm alleged due to the District's negligence in the first, second, and fourth causes of action was the Caguins' suffering due to Therese's death. In contrast, the alleged harm for the survival action was Therese's pre-death pain and suffering.

The District moved for summary judgment and, in the alternative, summary adjudication. The District argued that it was immune from liability under section 44808 because Therese was not on school property or under the District's supervision, nor had the District or any of its employees assumed responsibility for Therese, when she committed suicide. The District relied heavily on *LeRoy v. Yarboi* (2021) 71 Cal.App.5th 737 (*LeRoy*), where parents of a decedent-student brought an action against a school district based on a negligence theory that the defendant's failure to prevent their son's bullying caused his suicide. (*Id.* at pp. 740–741) Division 2 of the Fourth District affirmed summary judgment in the school district's favor based on section 44808 immunity. (*Id.* at pp. 743–744.)

The Caguins opposed the motion, countering section 44808 immunity did not apply because the "primary basis for liability" was the District's negligence on campus, which they alleged was the proximate cause of Therese's suicide. They distinguished *LeRoy* on factual grounds, including that Therese had expressed suicidal ideation to Taylor and Dickens, and they contended that Taylor had "assumed some responsibility for Therese's well-being" by reaching out to her outside of school hours. The Caguins further argued that the District's authorities did not consider a survival cause of action or a claim of negligent hiring, supervision, and retention of an incompetent employee.

The trial court agreed with the Caguins and denied the motion. The court held that *Hoyem*, *supra*, 22 Cal.3d 508 controlled, explaining that

6

"where the undisputed facts show that [Therese] repeatedly expressed suicidal ideation to [the District] and indicated that she had engaged in self-harm there are triable issues of material fact regarding whether [the District] failed to exercise reasonable care in the circumstances that take this case out of section 44808 immunity." The court expressed skepticism that *LeRoy* was good law, stating that "*LeRoy* disregarded *Hoyem*" and did not "attempt to harmonize its decision with the acknowledged holding of *Hoyem*." Moreover, the court distinguished the underlying facts in *LeRoy* from those in the instant case. Specifically, the court determined that Therese's "statements of self-harm raise a question of whether she suffered injury on campus due to negligent supervision that [the District] made no effort to correct, unlike in *LeRoy*, and [Therese's] parents were not given all information known to [the District] about the situation like the *LeRoy* father was."

The District filed the instant petition. We requested a preliminary opposition from the Caguins and invited the District to file a reply.[4] We then issued an order directing respondent superior court to show cause why mandate or other appropriate relief should not issue, real parties in interest to file a formal return, and the District to file a formal reply.[5]

---

[4] After no preliminary opposition was filed, we received a "Motion for Leave to File a Late Preliminary Opposition," seeking relief based on "the inadvertent failure to review the notice from the court" and alleged "non-receipt of notice from the court." We did not accept that notice of our order was not received. Nonetheless, we granted the request for an additional ten days to file a preliminary opposition.

[5] We further requested the parties to brief three questions: (1) Did the trial court correctly determine that there is a triable issue of fact as to whether decedent suffered injury on campus? (2) If so, is the District immune from liability under section 44808 because her death occurred off campus, after school hours? (3) Was the District entitled to summary adjudication of real party in interests' survival claim based on section 44808 immunity, and why or why not?

7

## II.    DISCUSSION

### A.    Demurrer Is Improper at this Stage

At the threshold, we dispatch the Caguins' return by demurrer.  They contend that writ relief is an inappropriate remedy because the District has an adequate remedy at law.  But our issuance of an order to show cause constituted an effective determination that the remedy at law was *not* adequate, and that an extraordinary writ is appropriate.  (*Castaneda v. Municipal Court* (1972) 25 Cal.App.3d 588, 592.)[6]  In any event, we do not revisit our decision now because an appeal "would raise a question that has already been fully presented and considered at length in this proceeding, and no purpose but delay, to the prejudice of the parties and the courts, would be served by refusing to decide the . . . question at this time."  (*Hagan v. Superior Court of Los Angeles County* (1960) 53 Cal.2d 498, 502.)

### B.    Judicial Construction of Section 44808 Immunity

Before we address the petition's merits, we find it useful to orient ourselves with section 44808 and its judicial construction.

Section 44808 reads:  "Notwithstanding any other provision of this code, no school district . . . or any officer or employee of such district . . . shall be responsible or in any way liable for the conduct or safety of any pupil of

---

[6] It suffices to say here that California courts have frequently granted writ review to address immunity issues, including on summary judgment. (See, e.g., *City of Chico v. Superior Court* (2021) 68 Cal.App.5th 352, 371 [granting peremptory writ of mandate where City was entitled to summary judgment based on a statutory immunity for injuries caused by natural conditions]; *O'Toole v. Superior Court* (2006) 140 Cal.App.4th 488, 504, 514 [issuing writ of mandate where police officers were entitled to summary judgment based on Gov. Code, § 820.6 immunity]; *Hope Internat. University v. Superior Court* (2004) 119 Cal.App.4th 719, 730 [denial of summary judgment reviewable by writ where case involved immunity from examination into religious doctrine].)

the public schools at any time when such pupil is not on school property, unless such district, board, or person has undertaken to provide transportation for such pupil to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, has otherwise specifically assumed such responsibility or liability or has failed to exercise reasonable care under the circumstances. [¶] In the event of such a specific undertaking, the district, board, or person shall be liable or responsible for the conduct or safety of any pupil only while such pupil is or should be under the immediate and direct supervision of an employee of such district or board."

As this court has observed, "[a] close reading of section 44808 discloses a linguistic ambiguity" in the first sentence of the statutory provision. (*Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1353 (*Cerna*).) While the provision grants immunity to school districts when a student is not on school property, it enumerates certain exceptions. The section unambiguously withdraws immunity when a district "has undertaken to provide transportation for such pupil to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, [or] has otherwise specifically assumed such responsibility or liability." (§ 44808.) What is less clear is the import of the sentence's final phrase: "or has failed to exercise reasonable care under the circumstances." (*Ibid.*) The "reasonable care" phrase could be read "as a self-sufficient exception [to immunity] separate from any [of the three preceding] undertaking[s] [enumerated in the section]." (*Wolfe v. Dublin Unified School Dist.* (1997) 56 Cal.App.4th 126, 133 (*Wolfe*).) But to do so "would be to say, absurdly: A district is never liable in negligence unless it acts negligently." (*Id.* at p. 129.) Thus, the " 'weight of authority' " holds that the "reasonable care"

phrase " 'refers to the failure to exercise reasonable care during one of the mentioned undertakings.' " (*Cerna*, at p. 1354; see *id.* at p. 1358, and cases cited.) This reading accords with the section's final sentence, which provides that "[i]n the event of such a specific undertaking, the district . . . shall be liable or responsible for the conduct or safety of any *pupil only while such pupil is or should be under the immediate and direct supervision of an employee of such district or board.*" (§ 44808, italics added.)[7]

The consensus of appellate courts, however, is difficult to harmonize with our Supreme Court's closely divided interpretation of the statute in *Hoyem*. (*Hoyem, supra,* 22 Cal.3d at pp. 511–523 (maj. opn.); *id.* at pp. 523–528 (conc. & dis. opn. of Clark, J. & dis. opn. of Richardson, J.).)

In *Hoyem*, the student-plaintiff left school grounds during school hours without permission and was injured by a motorist. (*Hoyem, supra,* 22 Cal.3d at p. 512.) He and his mother sued the school district, alleging that the school's negligent supervision proximately caused his injuries. (*Ibid.*) The majority first noted that case law "long established that a school district bears a legal duty to exercise reasonable care in supervising students *in its charge* and may be held liable for injuries proximately caused by the failure to exercise such care." (*Id.* at p. 513, italics added.) The majority then observed that "the duty to supervise includes the duty 'to enforce those rules and regulations necessary [for pupils'] protection' " and therefore school

---

[7] The fact that the final sentence of section 44808 contains the prefatory phrase, "[i]n the event of such a specific undertaking" and limits the immunity-divesting actions to a specific time frame — i.e., while the pupil is or should be under the supervision of an employee — suggests that the immunity-divesting actions must be one of the three specific undertakings identified in the first sentence of the statute and not just a general failure to exercise reasonable care.

authorities bore a duty to enforce a rule requiring that pupils remain on the school premises during the school day. (*Id.* at p. 514.)

Having established the school district's common law duty to supervise, the majority rejected the district's defense that the off-campus situs of the plaintiff's injury ipso facto immunized it. (*Hoyem, supra,* 22 Cal.3d at p. 515.) However, it expressly did not "probe the scope of school authorities' 'off premises' supervisory duty," explaining: "we merely reaffirm that school districts must exercise reasonable care in supervising their pupils while the pupils are on school premises. A district may be held liable if its breach of that duty proximately causes a student's injury." (*Id.* at pp. 515, 516; see *id.* at p. 523 ["defendant's liability in this case is posited not on an alleged failure to supervise [plaintiff] when he was off the school premises, but rather on an alleged failure to exercise due care in supervision on school premises"].)

The majority in *Hoyem* then addressed section 44808, finding two reasons it was inapplicable to the allegations. "First," the majority remarked that the section "explicitly . . . withdraw[s] . . . immunity whenever the school district, inter alia, 'has failed to exercise reasonable care under the circumstances.' " (*Hoyem, supra,* 22 Cal.3d at p. 517, italics omitted.) In a footnote, it expounded: "[t]he intent of the Legislature is clear: when a school district fails to exercise reasonable care the immunity of this section evaporates." (*Id.* at p. 517, fn. 2.)[8] "Second," the majority recognized that, in enacting section 44808, "the Legislature was principally concerned" with

---

[8] The concurring and dissenting opinions in *Hoyem* did not address the "reasonable care" phrase of section 44808. (See generally *Hoyem, supra,* 22 Cal.3d at pp. 523–528 (conc. & dis. opn. of Clark, J. & dis. opn. of Richardson, J., with Mosk, J., concurring).) Instead, they focused on policy considerations. (*Ibid.*)

11

restricting a school district's liability for accidents to students going to or from school after school hours.  (*Hoyem, supra,* 22 Cal.3d at p. 517.)

Courts have long struggled to make sense of the *Hoyem* court's "problematic" statements regarding the "reasonable care" phrase of section 44808.[9]  (*Cerna, supra,* 161 Cal.App.4th at p. 1353; see e.g., *Bassett v. Lakeside Inn, Inc.* (2006) 140 Cal.App.4th 863, 872 ["While the language of *Hoyem* could be read to withdraw immunity whenever a school district fails to exercise reasonable care, it has not been so interpreted since"].)  To begin, *Hoyem* articulates a paradox:  "On the one hand, we are told the Legislature intended section 44808 to free school districts from liability for accidents to students en route to school, consistent with the then-existing common law. [Citation.]  On the other hand, we are told the Legislature intended to hold school districts liable for every failure to exercise reasonable care."  (*Cerna,* at p. 1356.)  More fundamentally, however, it is nonsensical for statutory immunity to evaporate whenever a school district " 'has failed to exercise reasonable care under the circumstances.' "  (*Id.* at p. 1358, italics omitted; *Wolfe, supra,* 56 Cal.App.4th at p. 129.)  Indeed, "*Hoyem* did not discuss the relationship between the 'reasonable care' exception and the duty of the district or its employee."  (*Torsiello v. Oakland Unified School Dist.* (1987) 197 Cal.App.3d 41, 49; *Wolfe, supra,* 56 Cal.App.4th at p. 133.)  " ' "The 'reasonable care' phrase enunciates a standard of care and as such cannot exist in a vacuum; in the absence of a duty to which it applies, the phrase is

---

[9] The limited-purpose observation in *Hoyem* is less problematic. (*Hoyem, supra,* 22 Cal.3d at p. 517.)  "[I]f not fairly termed dictum [citations], [the discussion] was a carefully qualified holding.  It called the Legislature 'principally concerned' with before- and after-school travel to and from home. [Citation.]  'Principally' does not mean 'exclusively,' of course, and the point of the discussion was to stress the *Hoyem* case's 'very different circumstances . . . .' "  (*Wolfe, supra,* 56 Cal.App.4th at p. 134.)

12

meaningless." ' " (*Ramirez v. Long Beach Unified School Dist.* (2002) 105 Cal.App.4th 182, 189, quoting *Wolfe*, at p. 129, quoting *Torsiello*, at p. 48; see *Guerrero v. South Bay Union School Dist.* (2003) 114 Cal.App.4th 264, 271.)

Faced with this dilemma again, we do not change tack from our "widely endorsed" view: the "reasonable care" phrase in section 44808 is a standard of care applicable to the preceding three phrases and does not create an independent basis for liability. (*Cerna, supra*, 161 Cal.App.4th at p. 1357.)[10]

This approach does not disregard *Hoyem*. *Hoyem* considered an off-campus injury that occurred at a time when the school was supposed to be supervising the student. "*Hoyem,* consistent with the language of section

_____

[10] When we decided *Cerna*, we identified one exception, *Joyce v. Simi Valley Unified School Dist.* (2003) 110 Cal.App.4th 292, 301. (*Cerna, supra*, 161 Cal.Ap.4th at p. 1356) Today, we find no published California cases that have joined that view in the intervening decades. (Cf. *Doe v. Mount Pleasant Elementary School Dist.* (2025) 113 Cal.App.5th 1208, 1226 [reversing summary judgment in favor of district because "the district failed to make a prima facie showing its employees could have no duty of immediate and direct overnight supervision over Doe, under the circumstances" of a school-sponsored off-campus overnight science camp]; *Brinsmead v. Elk Grove Unified School Dist.* (2023) 95 Cal.App.5th 583, 589 [holding section 44808 immunity inapplicable where school undertook the "specific undertaking" of providing transportation to school, the school bus did not arrive, and the student died taking alternative transportation].) We observe that a federal district court denied a school district's motion to dismiss a parent's negligence claim for a student's off-campus suicide, holding that section 44808 "cannot shield [d]efendants from liability as a matter of law for their purported bad acts on campus." (*Whooley v. Tamalpais Union High School District* (N.D. Cal. 2019) 399 F.Supp.3d 986, 1000.) *Whooley* is not binding on us, and in any event, is distinguishable because the negligence claim that survived the motion to dismiss was premised on an "uncontrollable impulse" theory, where the plaintiff alleged the district's negligence caused a mental condition in which the decedent could not control his suicidal impulses. (*Id.* at p. 999.) Unlike *Whooley*, there is no theory of a teacher causing an "uncontrollable impulse" present in this case.

13

44808, withdraws immunity only when the student is or should be under the school's direct supervision." (*Bassett v. Lakeside Inn, Inc., supra,* 140 Cal.App.4th at p. 872.) Accordingly, we respectfully continue to cabin the import of *Hoyem*'s dictum that broadly states the statutory provision "withdraw[s] [its] grant of immunity whenever the school district, inter alia, 'has failed to exercise reasonable care under the circumstances.' " (*Hoyem, supra,* 22 Cal.3d at p. 517, italics omitted.)

## C. The District Is Immune from Liability for Harm to the Caguins Caused by Therese's Off-Campus Death

The District argues it is immune from liability on claims of harm premised on Therese's off-campus death and therefore is entitled to summary adjudication on those claims. We agree.

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) In considering a request for summary judgment by a defendant, the statute instructs that such a party "has met [his or her] burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (*Id.*, subd. (p)(2).)

Setting aside their survival claim, at bottom the Caguins contend the District failed to exercise reasonable care in its duty to supervise Therese and her peers on-campus during school hours and that breach proximately caused

14

Therese's off-campus suicide, causing their harm.[11]  As with any negligence claim, the Caguins must prove that the District (or its employees) owed them a duty of care, breached that duty, and the breach proximately caused their injuries.  (See *Thomas v. Stenberg* (2012) 206 Cal.App.4th 654, 662.)

But whether the District was negligent in performing a legal duty owed to the Caguins or Therese and whether that breach was the proximate cause of Therese's suicide and their injuries are issues of fact and are not at issue in this writ proceeding.  (*Beauchene v. Synanon Foundation Inc.* (1979) 88 Cal.App.3d 342, 346.)  At issue is whether the District is statutorily immune from liability for its purported negligence as a matter of law, which is an issue we review independently.  (*Guerrero v. South Bay Union School Dist.*, *supra*, 114 Cal.App.4th at p. 268.)

As discussed above, section 44808 immunizes a school district from liability for off-campus harm to a student proximately caused by the district's negligent acts unless the student was (or was supposed to be) under the district's supervision or the district specifically assumed responsibility for the student.  Put differently, a school district cannot be held liable for negligence

---

[11] Tort liability for public entities, such as schools, is based on statute.  (*Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 932.)  In view of Education Code sections that require the adoption of suicide prevention policies at grade schools and encourage the adoption of mental health services (§§ 215, 33282.1), the Caguins rely on Government Code section 815.6, which provides that a public entity is liable for injuries proximately caused by its failure to discharge a mandatory duty imposed by an enactment if the injury is of the kind the enactment was designed to protect against.  The Caguins also rely on Government Code section 815.2, which provides that a public entity is liable for the negligent acts caused by an employee unless the employee is immune from liability.  (Gov. Code, § 815.2, subds. (a), (b).)

that proximately causes off-campus harm when the student is no longer supposed to be under the district's supervision.

Here, there is no dispute that Therese's suicide occurred off-campus on January 2, 2023. There is no dispute that she was not supposed to be in, or supervised by, her school on January 2, 2023. Therefore, like the *LeRoy* court, we conclude the District is immune from liability for the Caguins' suffering caused by Therese's death under section 44808, even if the District breached a duty it owed to Therese or the Caguins. (*LeRoy*, *supra*, 71 Cal.App.5th at p. 744.)

The Caguins cite no authority for the proposition that "voluntarily and affirmatively engag[ing] with a vulnerable student" or communicating with a student by email outside of school hours qualifies as "specifically assum[ing] . . . responsibility or liability" for the student's well-being. But even if off-hours emails did constitute a specific undertaking of responsibility by a teacher, the Caguins do not account for the express language of section 44808, which provides: "In the event of such a specific undertaking, the district, board, or person shall be liable or responsible for the conduct or safety of any pupil *only while such pupil is or should be under the immediate and direct supervision of an employee of such district or board.*" (§ 44808, italics added.) Again, the Caguins do not contend that Therese was supposed to be under the immediate and direct supervision of a District employee when she committed suicide at home on January 2, 2023.

Accordingly, the District is immune from liability for the Caguins' claims premised on Therese's off-campus suicide. The trial court therefore should have granted summary adjudication in favor of the District on the first, second, and fourth causes of action.

16

**E.    The District Is Not Immune from Liability for the Survival Claim**

The Caguins' third cause of action is a survival claim, which is distinct from the other causes of action.  The Caguins allege that the District's negligence in performing its duty to supervise caused pre-death injuries, pre-death pain, and pre-death suffering to Therese, for which they seek damages as her successor-in-interest under Code of Civil Procedure section 377.30.  In particular, they allege Therese was "repeatedly harassed, bullied, teased, made fun of, and intimidated by students at [Therese's school] since September 2022" due to the District's and its employees' negligent conduct.

A survival claim is "a separate and distinct cause of action which belonged to the decedent before death but, by statute, survives that event. [Citation.]  The survival statutes do not create a cause of action.  Rather, '[t]hey merely prevent the abatement of the cause of action of the injured person, and provide for its enforcement by or against the personal representative of the deceased.' " (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1264.)  Section 377.34 of the Code of Civil Procedure allows for the recovery of damages for a decedent's "pain, suffering, or disfigurement" in survival actions "filed on or after January 1, 2022, and before January 1, 2026."  (Stats. 2021, ch. 448, § 1; *Ng v. Superior Court* (2025) 108 Cal.App.5th 382, 386–387.)

The District concedes that the Caguins can pursue their survival claim "to the extent that Therese incurred emotional or physical pain and suffering while on the middle school campus in the roughly three months before her death."  We agree.  There is sufficient evidence that the alleged harm — "by students at [Therese's school]" — occurred on-campus when Therese and the students were supposed to be under the school district's direct supervision.

17

We decline to make evidentiary rulings regarding what evidence the Caguins may present at trial to prove their survival claim. It would be improper for this court, in this posture, to "provide guidance for any eventual trial on the survival claim," as the District requests.

## III. DISPOSITION

The petition is granted in part and denied in part. A peremptory writ of mandate shall issue directing the trial court to vacate its order denying summary judgment and issue a new order granting summary adjudication of the first, second, and fourth causes of action. The petition for a writ of mandamus is otherwise denied. In the interests of justice, all parties shall bear their own costs associated with this writ proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(B).)


CLAY, J.[*]


WE CONCUR:

BROWN, P. J.
GOLDMAN, J.


*Vallejo City Unified School District v. Superior Court* (A173303)

---

[*] Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18

Filed 1/27/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| VALLEJO CITY UNIFIED SCHOOL DISTRICT, <br>     Petitioner, <br> v. <br> THE SUPERIOR COURT OF THE COUNTY OF SOLANO, <br>     Respondent; <br> VIONALYN CAGUIN et al., <br> Real Parties in Interest. | A173303 <br><br> (Solano County <br> Super. Ct. No. CU2302784) <br><br> **ORDER CERTIFYING OPINION FOR PUBLICATION** <br><br> **[NO CHANGE IN JUDGMENT]** |

THE COURT:

The opinion in the above-entitled matter filed on December 30, 2025, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

Date: _____1/27/26_____       _____Brown_____P.J.

1

## *Vallejo City Unified School District v. Superior Court* (A173303)

Trial Court:      County of Solano

Trial Judge:      Hon. Stephen Gizzi

Attorneys:

Horvitz and Levy, Robert Herring Wright, Karen Marie Bray, and Peder Kristian Batalden; Lewis, Brisbois, Bisgaard, & Smith, Dana Alden Fox, and Eliot Andrew Bennion, for Petitioner.

Gavrilov & Brooks, Ognian A. Gavrilov, Eliezer M. Cohen, and Priscilla Mercedes Parker, for Real Parties in Interest.

Harrison Kristopher, Bryan James Harrison and Edi Patience Kristopher for Real Parties in Interest.  (No appearance for Real Parties in Interest.)